LAMBERT, ET AL. *v.* SEABOLD, ET AL.

[No. 230, September Term, 1966.]

*Decided May 4, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, OPPENHEIMER, MCWILLIAMS and FINAN, JJ.

*James J. Doherty,* with whom were *Friedman & Goodman* and *Harvey N. Zimmerman* on the brief, for appellants.

*Eugene G. Ricks* and *Everett L. Buckmaster,* with whom was *George W. White, Jr.,* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

The Circuit Court for Baltimore County affirmed the action of the County Board of Appeals, hereinafter referred to as the Board, of September 9, 1965, which reclassified the properties known as 5400, 5402 and 5404 Edmondson Avenue, Baltimore County, from R-6, residence, one and two-family, to B-L, business, local. The three properties comprise the entire block of the northwest side of Edmondson Avenue between Orpington Road and North Bend Road in the Catonsville area. The properties in question had been subject to comprehensive rezoning, which took place in 1960 when the County Council adopted the land use map for the Catonsville area. The properties here in-involved were zoned R-6 which was contrary to the Planning Board's earlier recommendations, which had approved B-L classification for the properties in question.

On March 13, 1961, the Baltimore County Zoning Commissioner, hereinafter referred to as the Commissioner, denied an application for reclassification from R-6 to B-L filed by appellees Seabold and Hanf, the then and present owners of the 5400 and 5402 Edmondson Avenue. On appeal to the Board, the Commissioner's action was affirmed. In its opinion of December 14, 1961, the Board stated:

> "It is the unanimous opinion of the Board of Appeals that there have been no changes which warrant a reclassification — further as the Board has held in other opinions the Land Use Maps of Baltimore County adopted by the County Council must be upheld, unless there is substantial testimony to show an error in original zoning. The Board can find no such error in the testimony presented by the petitioners in the instant case."

The applicants did not appeal from the Board's decision.

In 1964 two petitions, seeking reclassification from R-6 to B-L, were filed with the Commissioner with respect to the three properties here involved. The Commissioner denied the reclassification requested and separate appeals to the Board were taken. Although the Board held independent hearings, it is apparent that the applications were considered as companion cases and in separate opinions, filed September 9, 1965, the Board reversed the Commissioner and granted rezoning from R-6 to B-L with respect to the properties herein involved. In its opinions the Board did not cite any subsequent change in the nature of the area since the comprehensive rezoning of 1960, but found that:

> "the original zoning on the 1960 map was in error because of the complete failure of the Council to consider existing uses at that time, and its complete failure to follow the logical recommendation of the Planning Board which did not only recognize existing uses of the subject property, but was completely in accord with reasonable uses in the immediate vicinity which the map, as adopted, was certainly not. * * *."

Appellant, "aggrieved" property owners, filed appeals in both cases to the Circuit Court, where they were heard as one. The lower court affirmed the Board's action, solely on the basis of a mistake, stating:

> "All parties to these appeals agree that there has been no significant change in the area since April, 1960, when the comprehensive zoning map was adopted by the County Council of Baltimore County. Accordingly, reclassification can be justified only, if at all, on the ground of error or mistake in the map."

The court further stated that the Board's decision on December 14, 1961, in which it denied reclassification from R-6 to B-L of the Seabold and Hanf properties, did not constitute *res judicata* and was not therefore binding upon the Board's present action. The judge reached this result because in 1961 the Board did not have before it applications to rezone all the properties

here involved, but only the Seabold and Hanf properties and "reclassification of those properties alone would have had the ridiculous result of establishing as a dividing line between the B.L. land and R-6 land a property line in the middle of a block." He thus concluded:

"Accordingly, if the Board had reclassified Seabold and Hanf in 1961, such action would have been arbitrary and capricious. The case presented to this Court at this time for consideration is quite different therefore, from that presented to the Board in 1961. * * *."

The issue before this Court is whether the lower court erred in not finding the Board's reclassification of the properties to be arbitrary, capricious or illegal in view of the absence of change in the character of the neighborhood and the Board's previous decision that the 1960 zoning map was not in error.

The record reveals that when the County Council of Baltimore County adopted the comprehensive zoning map in April 1960, the Council made a personal inspection of the properties in question prior to classifying them as R-6. It is true that the Planning Board in its recommendations had designated the block, in which these properties are situated, as B-L, but its recommendations were only advisory and the ultimate classification was the prerogative of the County Council, which chose not to follow the Board's recommendation.

A number of witnesses testified in the lower court adducing testimony on both sides of the question as to whether the original classification of the properties as R-6 was erroneous. Mr. Gavrelis, who was Deputy Director of Planning for Baltimore County at the time of the adoption by the Council of the comprehensive rezoning map and who is now Director of Planning, testified as follows:

Q. Didn't you say you thought the Planning Board was correct,—however * * * A. However, these recommendations, which are advisory, were rejected by Council. The same issue was then tested, and the map was found to be correct. So it is my personal feeling that the events, which happened since the Planning

Board made its recommendations, have shown to me that the map was correct, as adopted by Council, with respect to its not having commercial zoning here.

Mr. Bernard Willemain, a land developer, who testified at the 1961 hearing again appeared for the appellees, as an expert witness, and gave similar testimony to that given by him in 1961 to the effect, that in his opinion, the comprehensive rezoning map of 1961 was in error.

However, we think that it is significant that appellees Hanf and Seabold, who in 1961 sought a reclassification of their properties from R-6 to B-L on the basis that there was a mistake or error in the comprehensive rezoning plan, were not sufficiently persuaded by their own convictions to appeal the Commissioner's decision which upheld the comprehensive rezoning map.

We are also mindful that this Court has on other occasions stated the principle that there is a strong presumption favoring the validity of a comprehensive zoning map adopted by the proper authority, *Bd. of Co. Comm'rs v. Edmonds,* 240 Md. 680, 215 A. 2d 209 (1965) ; cf. *County Commissioners of Queen Anne's County, et al. v. Clarence W. Miles, et ux.,* 246 Md. 355, 228 A. 2d 450 (1967).

It is true that at the time of the 1961 hearing the Iampieri property (5404 Edmondson Avenue) was not included in the application, but if a mistake had been made in the adoption of the original comprehensive zoning map of 1960, the omission of the Iampieri property from the 1961 application would have had no bearing on any consideration of the question of a mistake or error in the original comprehensive zoning map—had in fact such mistake or error existed. As no mistake or error was found at that time and since it is admitted by all parties that there has been no change in the character of the neighborhood, we are constrained to find that the action of the Board, and its affirmance by the Circuit Court, in reclassifying the properties from R-6 to B-L, to quote Chief Judge Hammond in *Polinger v. Briefs,* 244 Md. 538, 541, 224 A. 2d 460, 461 (1966), "can amount to no more than the mere impermissible change of mind or heart which was condemned in *Kay Const.*

*Co. v. County Council,* 227 Md. 479, and *Schultze v. Montgomery County Planning Bd.,* 230 Md. 76. \* \* \*."

We do not think that we could sustain the lower court without doing violence to our recent decisions in *Woodlawn Ass'n v. Board,* 241 Md. 187, 216 A. 2d 149 (1966) and *Polinger v. Briefs, supra.*

In *Woodlawn,* a case arising in Prince George's County, the question of error or mistake in the classification of a specific area in a comprehensive zoning plan had been adjudicated in 1962 by the District Council and the Circuit Court, which had found that there was no mistake or error in the comprehensive zoning plan or any change in the character of the neighborhood since its adoption. The property owners, in the spring of 1963, renewed their application and the District Council refused to consider the matter *"res judicata"* and conducted a hearing *de novo* on the matter which resulted in a reversal of its former decision and a reclassification of the area. This action was affirmed by the Circuit Court; however on appeal, this Court, in reversing the Circuit Court, speaking through Judge Hammond (present Chief Judge), said at p. 190:

> "We find it unnecessary to discuss or decide the various contentions because we conclude that the principles of res judicata were controlling and find in the record no evidence of significant change in the neighborhood of the property between 1961 and 1964, which means that the action of the Council in rezoning in 1964 on essentially the same facts and conditions it found insufficient to permit rezoning in 1961 was arbitrary, capricious and illegal."

Even more in point with the case at bar is *Polinger v. Briefs, supra,* and we feel that it is controlling. In *Polinger,* just as in the instant case, the matter had never previously been heard by the Circuit Court as it had been in *Woodlawn. Polinger* presented this Court with a situation wherein the Montgomery County Council, on December 15, 1964, rezoned 12½ acres in the Cabin John area from R-90 to R-30, allowing four times greater density. The area had been comprehensively rezoned in 1957 by the adoption of a master plan. Thereafter, in 1961 the

owners of the property endeavored to secure rezoning to R-30 but withdrew the application after the technical staff and planning board recommended disapproval. In 1962 new owners filed an application for rezoning to a classification permitting high-rise apartments. The District Council denied the application, making the specific finding "that there had been no error in the promulgation of the comprehensive rezoning of 1957 'as to this property,' * * *." In 1964 another application was filed. The applicants introduced the testimony of an expert witness, in the person of a land planner, to the effect that a mistake had been made in the 1957 comprehensive zoning plan because of the alleged omission of the consideration of scattered commercial uses and the existence of one apartment house in the area. The District Council found no mistake or error in the comprehensive plan, but did find that there had been changes in the character of the neighborhood. On appeal to the Circuit Court, the District Council was reversed. In the appeal to this Court, the property owner again argued that there had been a mistake or error made in the 1957 comprehensive master plan. This Court, in affirming the lower court, found that there was no mistake or error in the master plan or change in the character of the neighborhood, and that the action of the District Council was arbitrary and capricious. Cf. *Whittle v. Bd. of Zoning Appeals,* 211 Md. 36, 125 A. 2d 41 (1956), in which last mentioned case Chief Judge Brune, speaking for the Court, aptly stated at p. 45: "The rule seems to rest not strictly on the doctrine of *res judicata,* but upon the proposition that it would be arbitrary for the board to arrive at opposite conclusions on substantially the same state of facts and the same law."

*Order reversed, appellees to pay the costs.*