SURKOVICH, ET AL. *v.* DOUB, ET AL.

[No. 365, September Term, 1969.]

*Decided May 14, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SMITH and DIGGES, JJ.

*John P. Zebelean, Jr.,* and *C. Victor McFarland* for appellants.

*Newton A. Williams* and *James D. Nolan,* with whom were *Nolan, Plumhoff & Williams* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

This case might well be entitled "Agneslane Re-visited", since the land sought to be rezoned is immediately adjacent to that involved in *Agneslane, Inc. v. Lucas,* 247 Md. 612, 233 A. 2d 757 (1967), is a part of the same tract, one of the principal expert witnesses for the landowner in that case appeared for the landowner here, and that case has a direct bearing on our decision here. We shall reverse the action of the trial court which approved the rezoning.

One of the appellees, Ragan M. Doub (Doub), back in 1943, whether fortuitously or through foresight does not appear and is unimportant to our decision, made an extremely advantageous purchase of 333 acres of farmland at what is now the intersection of the Baltimore Beltway

and Route I-70-N. The State Roads Commission by condemnation took 134 acres of that land for the interchanges constructed at that location, described as "one of the largest in the entire country."

The land here in question was zoned R-6 when the Western Area Land Use Map was adopted by the Baltimore County Council on November 15, 1962. The 61.2 acre tract here under consideration may be described as lying in the southeast quadrant of the Beltway and Interstate Route I-70-N. The Baltimore County Board of Appeals described it as "shaped somewhat like the wedge of a pie", saying "the entire west, northwest and north sides of the property [are] bounded by the Baltimore County Beltway, a ramp from the Beltway to I-70, and I-70, both six lane dual highways." The east side of the property is bounded by Woodlawn Drive which extends from Johnnycake Road northerly under I-70-N through the Industrial Park to the north, and thence to Security Boulevard and the Beltway. Johnnycake Road is the boundary on the south.

Doub sought M.L. zoning for 56.5 acres of the tract and M.L.R. zoning on the 4.7 acres located on the northeast side of Johnnycake Road.

Woodlawn Drive was formerly known as Clarke Boulevard. The land under consideration in *Agneslane, supra,* was immediately across Woodlawn Drive or Clarke Boulevard from the subject property and was bounded by Route I-70-N on the north and the Johnnycake Junior High School on the south. That school lies immediately across Woodlawn Drive from the subject property. In a corner of this land is the new firehouse which this Court mentioned at p. 617 of *Agneslane, supra,* as "not amount-[ing] to a change in the neighborhood."

The property here under consideration is currently being used as farmland and is improved by three or four buildings among which is a farmhouse. Doub was a technical party to *Agneslane,* being the owner of the reversionary interest in the tract which was subject to a ten year ground lease in favor of the corporate lessee, Agnes-

lane, Inc., with the further power in that corporation to convert the whole or part of the tract into a 99 year ground rent status. Doub owns in fee simple the tract here under consideration.

As in *Agneslane,* the deputy zoning commissioner approved the reclassification. The petition for reclassification in this case was filed on November 14, 1967, just over a month after the decision of this Court on October 12, 1967, in *Agneslane.* The Baltimore County Board of Appeals approved reclassification of the 56.5 acre tract from R-6 to M-L and denied the reclassification of the 4.7 acre tract from R-6 to M.L.R., stating on the latter point:

> "The Board feels, however, that the portion of the property for which the petitioner requested M.L.R.; that is, the 4.7 acres on the north side of Johnnycake Road opposite the Westview Park development, should be retained as R-6 so that houses can be built on the portion of the property to face the existing houses on the south side of Johnnycake Road, which should reduce to a minimum any possible impact on the existing residential development."

The M.L.R. classification apparently was desired to provide some buffer between the major portion of the tract and the R-6 development known as "Westview Park" which is across Johnnycake Road to the southwest. Doub and the protesting property owners each appealed the action of the Board of Appeals to the Circuit Court for Baltimore County. The two appeals were consolidated and considered as one by the circuit court, which affirmed the action of the Board of Appeals. Both sides appeal that decision.

In presenting his case to the Board of Appeals Doub proceeded both on the theory of error in the original zoning and change in the character of the neighborhood sufficient to justify his request for reclassification. It does

not clearly appear upon which ground the board and the court rested their respective opinions.

In *Agneslane, supra,* the requested rezoning was from R-6 (one or two-family residential use) to R-A (residential use apartment). That case was heard before the same individuals constituting the Board of Appeals who sat in this case. A divided board there rejected the claim of error in the map as well as the allegation of change in the character of the neighborhood. In *Agneslane* the contentions relative to error in the map centered around the claim that the County Council underestimated the number of people who would be occupying the area embraced within the "Western Planning Area" of the county and, therefore, had provided insufficient R-A zoned acreage to house the unexpected influx. It was claimed that the change in the character of the neighborhood consisted in the actual construction (as opposed to the planning of) Clarke Boulevard or Woodlawn Drive and Route I-70-N, the expansion of the Social Security complex which had purchased 53 additional acres, the rapid growth of the Meadows Industrial Park, and the construction of the new firehouse. Mr. Bernard Willemain was one of the principal witnesses in that case.

The principal witness for Doub in this case was the same Mr. Willemain, "a consultant in the fields of city planning, site planning, and zoning", who frequently appears in cases of this kind. He said the present R-6 classification is erroneous. This time he based his opinion on the fact that it "is one of the few vacant tracts of land left in this part of Baltimore County" and "is ideally suited for more intensive use, in terms of public facilities, such as sewer and water, roads that will carry heavy traffic, good topography, a good relationship to other community facilities, that would serve the tract, affording retail services to the users of the tract, and in this particular case, a very close relationship to the well established and mostly improved Meadows industrial tract, and the Social Security installation." He said that the property should be "devoted to its highest and best use" and

he was of the opinion "that the light industrial classification, as requested by Mr. Doub, represents the highest and best use for the property." He also testified to change in the immediate neighborhood which he thought justified the requested reclassification. As evidence of this change he pointed to the construction of I-70-N and Woodlawn Drive; the widening of the Beltway to six lanes and lighting; the construction of the firehouse; and the expansion of the Social Security complex north of I-70-N in the Meadows Industrial Park. To buttress his opinion, both as to error and as to change, he pointed to three zoning reclassifications to M.L.R. from various residential classifications embracing approximately 200 acres "less than a mile away" which took place between September, 1965, and November, 1966. They were all north of subject property and on the opposite side of the Beltway.

Mr. Doub described the buildings erected to the north on the other side of Route I-70-N and described the various out-conveyances from his tract including the conveyance for the firehouse in a corner of this land and the Johnnycake Junior High School. He saw traffic on the nearby roads, the dust "from the oxidized cement", noise and interchange lights as the principal evidence of change. He made no mention of error in the original zoning.

Mr. Frederick P. Klaus was qualified as an expert in real estate, being a realtor and real estate appraiser. He said the County Council did not provide sufficient industrial zoning in the Western Area 2B map saying:

"I base it on the need, that was not anticipated at the time of the adoption of the land use map. The industrial land that they provided for, and those that already can be developed with utilities, has practically been all developed, with the exception perhaps of a few acres in the Meadows Industrial Park.

"There were other lands zoned, on the other side of the Beltway, where there are utility prob-

lems. There are other lands zoned farther west, that have no access [to any of the rapid roads, the Beltway or 70-N] at this time and no utilities."

He regarded the three cases cited by Mr. Willemain as evidence of significant change in the neighborhood as well as proof that "the County Council did not provide enough land for future industrial growth". He said the R-6 zoning was erroneous because of the noise and the lights from the interchange and did not believe an R-6 developer could readily sell his houses. He was of the opinion that the property should have been zoned as was the property to the north of I-70-N stating as his reason "the fact that the Beltway was in existence at the adoption of the map, and also the fact it was known that 70-N would be constructed at this location, and it was known at the time that Woodlawn Drive would be extended, and tie into the industrial park on the north of 70-N." He considered land zoned industrial as not having utilities available if it would take as long as six months to get utilities to it.

Mr. Philip E. Klein, a real estate broker, testified that there was error in the original map, giving as his reasons the fact that at the time the map was adopted the route of I-70-N was fixed, the Meadows Industrial Park was there, movement of people into the county, movement of industry into the county, the need for a balanced economy and the fact that the growth of the Social Security complex was underestimated. He did not regard R-6 zoning as the highest and best use for the property nor one calculated "to satisfy the needs of the community and the county, the neighborhood."

Mr. H. B. Staab, Director of the Industrial Development Commission for Baltimore County, was called as a witness by Doub. He testified to the need for additional industrial land in Baltimore County. He regarded the subject land as ideally situated for this purpose. He pointed out that this tract is serviced by utilities, sewer

and water, and that of the approximately 500 acres in the southwest quadrant of Baltimore County zoned industrial none so zoned is serviced by such utilities. He was obliged to admit that the unused "inventory" of land zoned industrial in Baltimore County is about 12,000 acres, although not agreeing that the fact that it is zoned industrial makes it available. He said 300-500 acres is used each year for industrial purposes.

Mr. Carl Heinmuller, realtor, testified for the protestants that in his opinion the original zoning was proper. Mr. Fred W. Tuemmler, an expert planner, testified for the protestants that the original R-6 zoning was correct and there had not been sufficient changes in the neighborhood to justify the reclassification.

In *Wells v. Pierpont,* 253 Md. 554, 253 A. 2d 749 (1969), we said:

> "It is now firmly established that there is a strong presumption of the correctness of original zoning and of comprehensive rezoning, and that to sustain a piecemeal change therefrom there must be produced strong evidence of mistake in the original zoning or comprehensive rezoning or else evidence of substantial change in the character of the neighborhood. *Minor v. Shifflett,* 252 Md. 158 (1969), and the cases therein cited; *Randolph Hills, Inc. v. Whitley,* 249 Md. 78 (1968); *Woodlawn Area Citizens Ass'n v. Board,* 241 Md. 187 (1966). And, of course, the burden of proof facing one seeking a zoning reclassification is quite onerous. *Agneslane, Inc. v. Lucas,* 247 Md. 612, 618 (1967), and the cases therein cited." Id. at 557.

This position on the part of the Court may be more readily understood when it is noted that in 1 Yokley, *Zoning Law and Practice,* § 3-5 (3rd ed. 1965), the author states:

> "Spot zoning has a very erosive effect on any comprehensive plan. This for the reason that

spot zoning is the very antithesis of sound community planning and zoning. It is a high wave of disturbing character, spawned by legislative gusts that mar an otherwise calm sea of orderly community life.

"A comprehensive plan must be equated with the generally recognized objective of zoning laws which is that such laws seek a well-balanced community by the prevention of an unreasonable, arbitrary or capricious exercise of the local legislative power resulting in haphazard or piecemeal zoning.

"* * * The inherent vice in spot zoning is that it is a departure from the comprehensive plan. Thus, spot zoning contravenes the constitutional and statutory principle of zoning by districts in consonance with the character of the lands and structures and use suitability, and uniformity of use within the division.

"The effect of spot zoning is to produce a change out of harmony with the comprehensive plan for the good of the community as a whole."

As was pointed out by Chief Judge Prescott in *Miller v. Abrahams*, 239 Md. 263, 266, 211 A. 2d 309 (1965), with reference to this very same zoning map, when we consider the question of mistake we consider the "matter of whether or not the Council made a basic and actual 'mistake', as that term is used in zoning law, *at the time* when it classified the property as R-6." (emphasis in the original)

The arguments propounded relative to the need for industrial land ignore one of the main concepts of zoning and that is that there should be a comprehensive, long-range view of the entire area. It can well be argued with reference to any given tract of land that it is well-suited for industrial purposes, commercial purposes, apartment purposes, or anything else for which it does not happen to be zoned at that moment. There was testimony as to the

need for additional industrial land in Baltimore County, but no testimony that the County Council in adopting the zoning map had failed on the whole *at that time* to provide for orderly industrial expansion in Baltimore County —or in the area embraced by this map.

Basically the same arguments made in this case relative to industrial zoning were made in *Agneslane, supra,* as to apartments. They were rejected by the same Board of Appeals.

It is specifically noted that Doub's experts, in citing their reasons for believing there was error in the zoning map, have, to a large degree, talked in generalities. They have not presented real specifics of "chapter and verse" for their contention that the County Council committed error. They have made statements relative to industrial land and the need for it, but they have come up with no detailed analysis in the nature of a bill of particulars showing what should have been reasonably foreseen by the Council, but was ignored by it. The fact that a tract of 200 acres had been rezoned from residential to industrial, for whatever reason, certainly in and of itself was not evidence of error in the map.

As was said by Chief Judge Prescott for the Court in *Miller v. Abrahams, supra,* "[T]he prevailing general rule, almost universally followed, is that an expert's opinion is of no greater probative value than the soundness of his reasons given therefor will warrant. Cf. *State, etc. v. Critzer,* 230 Md. 286." *Id.* at 273. See also *Creswell v. Baltimore Aviation Service, Inc.,* 257 Md. 712, 264 A. 2d 838 (1970).

The rezoning classification cases cited are not impressive as evidence of change in the neighborhood. Property nearly a mile away on the opposite side of the Beltway and on the opposite side of Route I-70-N, two real barriers, can hardly be called a part of the same neighborhood.

To argue that the network of highways here existent is evidence of change in the neighborhood justifying rezoning, ignores the fact that this very network of high-

ways was laid down on the plan when the zoning map was adopted. Surely, it was contemplated that some change would come about as a result of those highways. In other words, the change is change that was contemplated at the time the map was adopted. See *Chatham Corp. v. Beltram*, 252 Md. 578, 585, 251 A. 2d 1 (1969); and *Smith v. Co. Comm'rs of Howard Co.*, 252 Md. 280, 249 A. 2d 708 (1969). In *MacDonald v. County Board*, 238 Md. 549, 210 A. 2d 325 (1965), Judge Oppenheimer said for the Court:

> "The building of a golf course, the dredging of Swan Creek, the reservation of a school site within the tract, and the authorization of public utility services for the Tantallon enterprise are as consistent with increased rural residential development as they are with the building of high-rise apartments. The characterization by the appellants of these alleged changes as 'bootstrap' arguments, in our opinion, is appropriate. * * * The completion of the Woodrow Wilson Bridge and Anacostia Freeway listed as additional changes presumably were envisaged in the comprehensive zoning plan, adopted by the legislative body only a little less than five years before the Land Company's application. In any event, the Bridge and Freeway are some miles away." *Id.* at 555-56.

In *France v. Shapiro*, 248 Md. 335, 236 A. 2d 726 (1968), Judge Singley said for the Court:

> "It is well recognized that the location in a residential zone of improvements of a character permitted by the ordinance, even although not necessarily compatible with a residential development, is not the type of change of character of a neighborhood which will justify reclassification. *Agneslane, Inc. v. Lucas, supra* (fire house); *Baker v. Montgomery County Council*

[241 Md. 178, 215 A. 2d 831 (1966)] (school);
*Levy v. 7 Slade, Inc.,* 234 Md. 145, 198 A. 2d 267
(1964) (synagogue, school, parking lot, power-
house); *Kaslow v. Mayor and Council of Rock-
ville,* 236 Md. 159, 202 A. 2d 638 (1964)
(church); *Montgomery County v. Ertter,* 233
Md. 414, 197 A. 2d 135 (1964) (armory, motor
shed, paved area). But compare *Meginniss v.
Trustees of the Sheppard and Enoch Pratt Hos-
pital,* 246 Md. 704, 229 A. 2d 417 (1967), which
involved an intensification of institutional uses
without an insulating line of demarcation.

"Nor should an improvement in water and
sewage facilities, standing alone, be taken as a
change of conditions affecting the neighbor-
hood. *MacDonald v. County Board,* 238 Md. 549,
556, 210 A. 2d 325 (1965). But compare *Mac-
Donald* with *Rohde v. County Board of Appeals
for Baltimore County,* 234 Md. 259, 199 A. 2d
216 (1964); and with *White v. County Board of
Appeals,* 219 Md. 136, 148 A. 2d 420 (1959)."
*Id.* at 343.

A situation strikingly similar to the one at hand was
presented to the Court in *Polinger v. Briefs,* 244 Md. 538,
224 A. 2d 460 (1966), where Chief Judge Hammond said:

"Further indication of the arbitrary and ca-
pricious nature of the rezoning by the Council
is the fact that in 1962 it found no evidence of
change in the single-family residential develop-
ment of the area which would justify rezoning
for multi-family density but in 1964, without
any change in circumstance, fact or applicable
law, it found change sufficient to sustain a re-
zoning for fourfold residential density. This can
amount to no more than the mere impermissible
change of mind or heart which was condemned
in *Kay Const. Co. v. County Council,* 227 Md.
479, and *Schultze v. Montgomery County Bd.,*

230 Md. 76. See also *Mettee v. County Comm'rs,* 212 Md. 357, 365-66; Cohen, *Maryland Administrative Law,* 24 Md. L. Rev. 1, 20-24, and *cf. Alvey v. Hedin,* 243 Md. 334; *The Chatham Corp. v. Beltram,* 243 Md. 138; *Woodlawn Assoc. v. Board,* 241 Md. 187." Id. at 541.

See also *Lambert v. Seabold,* 246 Md. 562, 229 A. 2d 116 (1967), where in 1961 the Board of Appeals of Baltimore County held there were no changes which warranted a reclassification and in 1965 held without citing any subsequent change in the character of the area subsequent to the comprehensive rezoning of 1960:

> " 'the original zoning on the 1960 map was in error because of the complete failure of the Council to consider existing uses at that time, and its complete failure to follow the logical recommendation of the Planning Board which did not only recognize existing uses of the subject property, but was completely in accord with reasonable uses in the immediate vicinity which the map, as adopted, was certainly not. * * *.' " *Id.* at 564.

Citing *Polinger v. Briefs, supra,* this was held to "amount to no more than [a] mere impermissible change of mind or heart".

For the Board of Appeals "to blow hot and blow cold" as it has done in *Agneslane, supra,* and this case on basically the same facts on properties lying along side of each other, we hold to be arbitrary and capricious conduct. Accordingly, the trial court should have affirmed the denial of the M.L.R. zoning and should have reversed the granting of the M.L. zoning.

> *Order affirmed in part and reversed in part and case remanded for passage of an order in conformity with this opinion; appellees to pay the costs.*