## BARTNIK *v.* CALVERT COUNTY HOSPITAL OF CALVERT COUNTY, MARYLAND ET AL.

[No. 481, September Term, 1970.]

*Decided June 3, 1971.*

*Motion for rehearing filed June 22, 1971; denied June 24, 1971.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Harry P. Anestos* for appellant.

*Warren F. Sengstack* for appellees.

SMITH, J., delivered the opinion of the Court.

Appellant Frank Bartnik, Jr. (Bartnik), sought a change of zoning from residential (R-1) to commercial (C-1) in Calvert County. Over the objections of Calvert County Hospital of Calvert County, Maryland, and others who appear here as appellees, this change was approved

by the County Commissioners of Calvert County. The trial judge reversed. We shall affirm his order.

The tract in question consists of 1.57 acres at the northwest corner of Maryland Route 2-4 and Stoakley Road, near the unincorporated town of Prince Frederick. Calvert County Hospital is located on the northeast corner of the intersection.

The county planning commission recommended against the change, stating that neither the applicant nor his attorney had presented specific justification for rezoning of the property with reference to the factors prescribed in the zoning ordinance and further stating:

> "The County Comprehensive Master Plan recommends a policy 'to encourage highway-oriented commercial outlets to occur only at selected intersections in the county.' This Commission has consistently followed that policy. While the Stoakley Road—Route 4 intersection does have surrounding 'non-conforming' business establishments which were in existence at the time of adoption of the Zoning Ordinance, it has not been selected or designated as an intersection to be developed as a commercial center. It is believed that if this small tract were to be rezoned commercial, a precedent would be [set] which would result in the additional rezonings and undesirable linear commercial growth on both sides of Route 4 in the immediate area.
>
> "The applicant proposes to construct and operate a type of business which is needed and appropriate for the county, but the site selected is not consistent with the approved land use plans, the plans for development of commercial outlets, or in the interest of safe and unrestricted traffic flow on Route 4."

When the matter reached the circuit court Judge De-

Blasis remanded the case to the County Commissioners for the making of findings of fact. On that remand the following findings of fact were made:

"1. That the subject property is bound on the east by a state highway soon to be dualed, on the north by the Charles A. Cox property, presently being put to a commercial use, to the west by vacant land and the Drive-In Theatre and miniature golf course, among others, and to the south by Stoakley Road.

"2. That in the immediate vicinity of said property (in a one-eighth mile radius, and in addition to the commercial establishments above mentioned) there exists further to the south a real estate office and grocery store; to the east a meat locker plant, an automobile dealership, the Calvert County Hospital and Nursing Home; to the north a commercial stable and a florist shop, and another automobile dealership.

"3. That in the immediate area, there are nineteen commercial establishments.

"4. That after reviewing the above findings of fact, the Board feels that the master plan when promulgated did not seem to have taken those facts into account and should have given more weight to existing uses for which the land had already been adapted, or to those which by virtue of the use of adjacent land, such land would seem to be irrevocably committed. Accordingly the presumption of correctness of the original zoning in the subject property has been overcome.

"5. That taking into consideration the existing uses and the characteristics of the subject property, and of the adjacent property, it would be impractical for the owner to put it to any other use other than a commercial use and that

to require this property to remain in its present zoning status would be a deprivation of the property rights of the owner and confiscatory. It is inconceivable that a residence would ever be built on the subject property.

"6. That the Board finds as a fact that there was a mistake in the original zoning map.

"7. The Board further finds that because of the dualization of the highway, there exists sufficient change in the neighborhood to warrant the rezoning requested. The Board takes into account the well known fact that before the State Roads Commission of Maryland authorizes the construction of a dual lane highway, it requires traffic counts, etc. to determine the necessity of same. The Board feels that in light of the above, there has been a convincing demonstration that the proposed rezoning would be logical for the subject property.

"8. The Board further finds as a fact that the use of the property for the purposes and rezoning requested would not affect the Calvert County Hospital or the Nursing Home. The Hospital is separated from the proposed property by a dual lane highway and some 250 yards of lawn. The Board takes administrative notice that the Hospital built its facilities when property very near this was being used as Angle's Snack Bar, a public restaurant, and did not protest when an automobile dealership was erected immediately adjacent to it.

"9. The Board finds as a fact that the rezoning as requested will not create a traffic hazard either on Route 4 or Stoakley Road because the property is so shaped that entrances and exits can be conveniently located and the intersection it abuts is well suited to take care of traffic physically and safely."

It was conceded at oral argument before us that dualization of Maryland Route 2-4 had already proceeded to within two or three miles of the subject property at the time the zoning map was adopted and that the intent of the Maryland State Roads Commission to proceed with dualization to the subject property was well known at that time.

No expert testimony was presented at the hearing before the County Commissioners, the only evidentiary hearing in this case. Bartnik presented to them photographs and a map which have not been printed in the record extract nor included in the record to us. It is upon the basis, undoubtedly, of that map and those photographs that the Commissioners made their determination that there were 19 commercial establishments "in the immediate area". Bartnik described these establishments as being within ½ mile of the subject property. Most of them were not any more precisely located by way of testimony than that. Relative to the map he said:

> "The red squares are the commercial establishments and the pencil squares are the residential homes, that I have sketched in here and you will notice there are about 26 homes and 19 commercial establishments from Dares Beach Road on the lower right and the High School, up to a little beyond Stoakley Road, up to the Sam Bowen's Florist Shop, that is included. I have them identified by number in the right hand side. Each of them down to 19."

Bartnik and the marketing director of Tastee Freez were the sole witnesses for the applicant. The latter individual gave no testimony on the issues of mistake in the original zoning map or change in the neighborhood subsequent to the adoption of the map. The owner of the lot which Bartnik had contracted to purchase was present and, at the request of counsel for Bartnik, said "a few words" which did not reflect upon the issues. Another adjoining

property owner was present and expressed himself as being desirous of seeing the change in classification because then he might be "commercially zoned".

The 19 commercial establishments claimed as being in the area were all said to have been in existence at the time of the adoption of the map. Bartnik in his brief states that the nearby property of Cox Motors was reclassified from residential to commercial as an outgrowth of the widening of Route 2-4 and also mentions commercial classification granted Bowen's Florist. It is to be noted that the findings of fact by the County Commissioners do not mention these reclassifications as evidence of change. The location of the florist shop was estimated as about half a mile away.

By now certain points are well established in Maryland zoning law. There is a strong presumption of the correctness of original zoning. *Surkovich v. Doub,* 258 Md. 263, 270, 265 A. 2d 447 (1970), and *Wells v. Pierpont,* 253 Md. 554, 557, 253 A. 2d 749 (1969), and cases there cited. Accordingly, to sustain a piecemeal change there must be produced strong evidence of mistake in the original zoning or comprehensive rezoning or else evidence of substantial change in the character of the neighborhood. *Wells v. Pierpont, supra.* The issue of mistake is the question of whether the legislative body made a basic and actual "mistake", as that term is used in zoning law, at the time when it classified the property. *Miller v. Abrahams,* 239 Md. 263, 266, 211 A. 2d 309 (1965). The burden of proof is upon the applicant for rezoning. This burden has been described as "quite onerous". *Agneslane, Inc. v. Lucas,* 247 Md. 612, 618, 233 A. 2d 757 (1967). The mere construction of a public improvement such as a highway, known and expected at the time a zoning map is adopted and shown on the master plan, will not standing alone be sufficient evidence of change to justify reclassification. *Surkovich v. Doub, supra; Chatham Corp. v. Beltram,* 252 Md. 578, 585, 251 A. 2d 1 (1969) ; *Smith v. Co. Comm'rs of Howard Co.,* 252 Md. 280, 284-85, 249

A. 2d 708 (1965) ; and *MacDonald v. County Board,* 238 Md. 549, 555-56, 210 A. 2d 325 (1965). The presence of a single nonconforming use in and of itself is not evidence of error in original zoning requiring a change of classification. *Minor v. Shifflett,* 252 Md. 158, 167, 249 A. 2d 159, *cert. den.,* 396 U. S. 844 (1969). As we there said, to so hold would defeat the very purpose of zoning. Ordinarily, planners expect that nonconforming uses will wither on the vine, so to speak, and ultimately disappear.

A substantial number of nonconforming uses within a small area might possibly be evidence of mistake, but in this instance we have no real specification of what is regarded as the neighborhood. There is no evidence in the record from which one could legitimately infer in this case that the 19 commercial establishments said to be within a half mile area established the character of the neighborhood. As Judge Finan put it for the Court in *Helfrich v. Mongelli,* 248 Md. 498, 505, 237 A. 2d 454 (1968), the presence of those 19 nonconforming commercial uses in the neighborhood "would indicate a legislative intent to maintain the residential character of the neighborhood free from further commercial encroachment."

A review of this record convinces us that it is devoid of substantial supporting facts justifying reclassification. Therefore, Judge DeBlasis was correct in holding that Bartnik has failed to establish change or mistake.

The issue of confiscation was raised because of the comment of the County Commissioners in their findings of fact "that to require this property to remain in its present zoning status would be a deprivation of the property rights of the owner and confiscatory." No evidence of any kind was presented on this subject. We have said many times that to establish that a zoning classification amounts to confiscation it is incumbent upon the property owner to prove that the existing zoning deprives him of all reasonable use of his property and he must show that the property could not be used for any of the

442

permitted uses in the existing zone. *Cabin John Ltd. v. Montgomery Co.*, 259 Md. 661, 670, 271 A. 2d 174 (1970), and cases there cited.

*Order affirmed; appellant to pay the costs.*