# COUNTY COUNCIL FOR MONTGOMERY COUNTY, MARYLAND *v.* DISTRICT LAND CORPORATION ET AL.

[No. 170, September Term, 1974.]

*Decided May 8, 1975.*

*Motions for rehearing filed June 6, 1975; denied June 24, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Stephen J. Orens, Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney, Alfred H. Carter, Deputy County Attorney,* and *John B. Walsh, Jr., Assistant County Attorney,* on the brief, for appellant.

*Jerome E. Korpeck,* with whom were *Robert L. Brownell, Mark W. Kugler* and *Wheeler & Korpeck* on the brief, for

District Land Corporation, part of appellees. *William M. Canby,* with whom was *James K. Ligon* on the brief, for Charles H. Ligon et al., etc., other appellees.

SINGLEY, J., delivered the opinion of the Court.

In July, 1972, the Montgomery County Council (the Council) sitting as the District Council, enacted Resolution 7-797 which adopted a sectional map amendment affecting approximately 3,903 acres in those parts of the Darnestown and Gaithersburg Election Districts of the County which lay within the boundaries of the Master Plan for Gaithersburg and Vicinity planning area. Approximately 207.9 acres were rezoned by the resolution, including 73.5 acres (the Anderson Tract) theretofore classified R-20 (multiple-family, medium density residential), owned by the appellant District Land Corporation (District Land), which were reclassified as R-R (rural residential), and 35 acres (the Kunlo Tract) which had been classified I-1 (light industrial), owned by Charles H. Ligon, Steven O. Beebe and A. Dement Bonifant, trustees for Gaithersburg Associates, a partnership (the Trustees), which were also reclassified R-R.

District Land and the Trustees had opposed the adoption of the resolution as it affected their properties. They appealed to the Circuit Court for Montgomery County which entered an order reversing the action of the Council insofar as it affected the Anderson Tract and the Kunlo Tract. This appeal followed.

As is typical of zoning controversies involving valuable tracts of undeveloped land, this case has produced a massive record. What is atypical, however, is the narrowness of the only real issue: whether the sectional map amendment adopted by Resolution 7-797 constituted comprehensive rezoning. For a resolution of this question, additional facts must be considered.

When District Land purchased the Anderson Tract in 1967, some 69 acres had already been rezoned R-20. District Land proceeded with its plan to develop the R-20 parcel with apartment buildings, which were permitted in an area so

classified, despite the fact that there was being developed a Master Plan for Gaithersburg and Vicinity (the Master Plan) during the years 1968-1970 which recommended an R-R classification for the parcel. The Master Plan was finally approved by the Council on 8 January 1971 and by Maryland-National Capital Park and Planning Commission on 14 January.

A building permit for the construction of 420 apartment units was issued in August of 1971, but construction could not proceed because of the refusal of Washington Suburban Sanitary Commission to issue water and sewer connection permits, a refusal based on the fact that the proposed development was not in compliance with the Master Plan. This controversy ultimately reached us in *District Land Corp. v. Washington Suburban Sanitary Comm'n*, 266 Md. 301, 292 A. 2d 695, decided 5 July 1972, in which we remanded the case to the Circuit Court for Prince George's County for the issuance of a writ of mandamus directing the Sanitary Commission to issue the connection permits. On 11 July 1972, Resolution 7-797 was enacted by the Council.

The Trustees acquired the Kunlo Tract in 1965. In 1966, it was reclassified from R-R to I-1 by the District Council. We upheld the reclassification in *Kirkman v. Montgomery County Council*, 251 Md. 273, 247 A. 2d 255 (1968). A five-acre portion of the property has since been cleared and fenced and is used for the storage of motor vehicles and boats.

The Master Plan had been the subject of extended consideration. Public hearings had been held as early as 1968 and the plan was ultimately published in final draft form in June, 1970 and adopted by the Council in January, 1971. Application F-805, which proposed the sectional map amendment at issue here, was introduced by the Council itself in March, 1972. It was approved by the Montgomery County Planning Board of the Maryland-National Capital Park and Planning Commission in April and was the subject of an extensive public hearing in June, before Resolution 7-797 was enacted in July.

The court below, in reversing the action of the Council, concluded that Resolution 7-797 in the contemplation of the County's zoning ordinance, Montgomery County Code (1972, 1973 Cum. Supp.) § 59-195, was a local map amendment in that it down-zoned two properties and was not, as it purported to be, a sectional map amendment effecting comprehensive rezoning.[1] The court concluded that as a local map amendment, it failed because there had been no showing of change or mistake. *See Wells v. Pierpont,* 253 Md. 554, 253 A. 2d 749 (1969).

We simply do not share the trial court's view. To us, this case seems strangely reminiscent of *Montgomery County Council v. Leizman,* 268 Md. 621, 303 A. 2d 374 (1973). There, the property owners held two small parcels, one of which had been reclassified from R-R to C-1 in 1966. A little later, the Maryland-National Capital Park and Planning Commission adopted the Master Plan for the Rock Creek Planning Area, which recommended the reclassification of both parcels to R-T (residential-town houses). In 1971, the District Council approved a sectional map amendment to bring some 30 properties into conformity with that Master Plan.

What Judge McWilliams, for the Court, said there at 622 of 268 Md. is a nutshell description of this case:

"It turns out, however, that there is really only one question to be resolved, *i.e.,* whether the zoning application . . . filed by The Maryland-National Capital Park and Planning Commission . . . proposes a comprehensive rezoning bearing a

---

1. Montgomery County Code (1972, 1973 Cum. Supp.) § 59-195 provides that proposed text or map amendments may take one of three forms:

"(a) A local amendment covering a single tract, all portions of which are proposed to be classified in the same zone; or all portions of which are proposed to be classified in one of two alternative zones.

"(b) A sectional plan amendment covering a section of the Maryland-Washington Regional District, portions of which may be proposed to be classified in different zones.

"(c) A district plan amendment covering the entire Maryland-Washington Regional District within the county."

substantial relationship to the public health, comfort, order, safety, convenience, morals and general welfare. If there is such a relationship then the comprehensive rezoning, which was granted by the Montgomery County Council sitting as the District Council for the Maryland-Washington Regional District in Montgomery County . . . enjoys a strong presumption of validity and correctness, *Norbeck, supra,* [*Norbeck Village Joint Venture v. Montgomery County Council,* 254 Md. 59, 254 A. 2d 700 (1969)] and the cases therein cited."

In a preamble to Resolution 7-797 the Council stated:

"This application is a sectional map amendment filed by the County Council for Montgomery County, Maryland, sitting as a District Council for that portion of the Maryland-Washington Regional District located within Montgomery County, for the purpose of bringing the properties involved into conformance with the Master Plan for Gaithersburg and Vicinity which was adopted by the Maryland-National Capital Park and Planning Commission on January 14, 1971, and approved by the County Council for Montgomery County, Maryland, sitting as a District Council, on January 8, 1971. The purpose of this sectional map amendment is to bring the zoning of all of the lands within the regional district adjacent to the Seneca Creek Park (involving 207.9 ± acres) into conformity with the Master Plan for Gaithersburg and Vicinity. The total acreage which is the subject of this application is 3,903 acres.

"The application proposes to rezone eight separate parcels as set forth in the application. By memorandum dated April 27, 1972, the Technical Staff of the Maryland-National Capital Park and Planning Commission recommended that this application be approved by the District Council. In

its report and in its testimony at the public hearing on this application held on June 15, 1972, a member of the Technical Staff described the individual parcels and discussed the reasons for the conclusions of the Staff regarding the application. The Staff noted as follows:

\* \* \* "

The eight parcels were then described. Five were to be up-zoned; the two at issue here down-zoned, and no action was taken as regards a .64-acre parcel, which had been included in the application in error.

The preamble continued:

"Both in its report and its testimony at the hearing, the Technical Staff stated that the most dominant open-space feature shown in the Master Plan for Gaithersburg and Vicinity is the Great Seneca Park which follows Great Seneca Creek and extends throughout the Gaithersburg Planning Area from a point north of the planning area to the Potomac River. The portion of Great Seneca Park south of Maryland Route 355 is to be acquired by the State, and the remaining portion of the park north of Route 355 is to be acquired by the Maryland-National Capital Park and Planning Commission. The subject parcels, therefore, were segregated from the remaining portion of the Gaithersburg Planning Area and made a part of this application so as to bring those lands within the regional district adjacent to the Great Seneca Park into conformity with the Master Plan. The Technical Staff noted that for the most part, the classifications requested are a decrease in intensity to allow the preservation of the Great Seneca Park by establishing only low-intensity development nearby. Additionally, the parkland is the only wedge between the two-corridor cities of Gaithersburg and Germantown. Thus, the Staff felt

that the only way to preserve the 'corridor city concept' would be to prohibit the encroachment of high-density uses between Gaithersburg and Germantown by low-intensity development near the Park so that the two 'cities' could not merge.

"On May 11, 1972, the Montgomery County Planning Board and the Maryland-National Capital Park and Planning Commission unanimously, by a 4-0 vote, one member abstaining, recommended to the District Council that this application be approved for the reasons set forth in the Technical Staff report which the Planning Board approved and incorporated by reference into its recommendation. At the public hearing, in addition to testimony by the Technical Staff, numerous citizens testified in favor of the application and indicated that low-density zoning along Great Seneca Park is essential for the protection of the Park and the Seneca watershed. Further, there was testimony that higher density zoning and development should be located in the larger cities, i.e., Gaithersburg and Germantown, and that the intensity of development should be progressively lowered for land moving in the way of the corridor cities. The Great Seneca Creek represents the natural dividing line between the corridor cities of Gaithersburg and Germantown, and there was testimony that the application, if granted, would be an appropriate manner of preserving the wedge between the two corridor cities."

* * *

"The District Council, after thorough consideration and evaluation of the transcript and exhibits of record, agrees with the Planning Board and Technical Staff and finds that this application with a single exception detailed below should be approved as a comprehensive rezoning to bring the zoning of the lands within the regional district that

are adjacent to the Seneca Creek Park into conformity with the Master Plan for Gaithersburg and Vicinity. The District Council reiterates its agreement with the stated purposes and goals of the Master Plan for Gaithersburg and Vicinity. To achieve these purposes and goals, the District Council deems it necessary to grant the comprehensive rezoning of the several parcels to provide for a coordinated, planned and orderly development of the Planning Area with low density development to preserve the Great Seneca Park as an open-space wedge between Gaithersburg and Germantown and to prevent an urban spread which would merge Gaithersburg with Germantown. Further, the District Council finds that the land use pattern that will result is that which the District Council and Planning Commission have established as County policy by their adoption and approval of the Master Plan, and which is supported by the road network, the sewerage plan, the school locations and other elements of the Plan."

What Chief Judge Hammond, writing for the Court, said in *Norbeck Village Joint Venture v. Montgomery County Council,* 254 Md. 59, 254 A. 2d 700 (1969), is pertinent here:

"The appellants argue that for the County to decrease the permissible density of their land and that of other similarly zoned land and to refuse to furnish sewerage to their land in order to control the growth of population and to continue the present open space in the Olney region was to use zoning and planning impermissibly as a substitute for eminent domain and to reduce so substantially the value of their land as to amount to confiscation.

"If these contentions are sound, no zoning would ever have been allowed or sustained and all comprehensive rezoning would have to continue or increase permissible density, not reduce it. All original zoning decreases the right to use property

as the owner pleases. Zoning places restrictions on property that was free of any restriction and the value of some if not most of that property necessarily is going to be lessened. None of this as such invalidates comprehensive zoning, original or subsequent. *Euclid v. Ambler Realty Company*, 272 U. S. 365, 71 L. Ed. 303 [(1926)]; *Ark Readi-Mix v. Smith*, 251 Md. 1 [, 246 A. 2d 220 (1968)]. The broad test of the validity of a comprehensive rezoning is whether it bears a substantial relationship to the public health, comfort, order, safety, convenience, morals and general welfare, and such zoning enjoys a strong presumption of validity and correctness. *Scull v. Coleman*, 251 Md. 6 [, 246 A. 2d 223 (1968)]; *Stevens v. City of Salisbury*, 240 Md. 556 [, 214 A. 2d 775 (1965)]. A property owner has no vested right to the continuance of the zoning status of his or neighboring property, merely the right to rely on the rule that a change will not be made unless it is required for the public good. *Wakefield v. Kraft*, 202 Md. 136, 144 [, 96 A. 2d 27, 30 (1953)]. . . ." 254 Md. at 65-66.

*Scull v. Coleman*, 251 Md. 6, 246 A. 2d 223 (1968) involved a similar issue:

"On September 21, 1966, the Maryland-National Capital Park and Planning Commission (Planning Commission) adopted a Master Plan for Kemp Mill-Four Corners and [V]icinity of Montgomery County. The area covered by the plan consisted of 4,263 acres in southeastern Montgomery County, of which approximately eighty-nine per cent was developed at the time of the adoption. The Planning Commission filed zoning application No. E-955, a sectional map amendment, with the District Council on December 2, 1966, for the purpose of rezoning all of the land within the planning area to conform with the Master Plan's recommended classifications. This application proposed to rezone

approximately 128 acres, including the appellees' 3.5 acres which is located at the southwesterly side of University Boulevard near the intersection of Arcola Avenue in Wheaton, Maryland, from C-1 (Local Commercial) to the R-60 (One-Family, Detached Residential) zone. Appellee, Randolph Hills, Inc., is the owner of the subject property, and appellee Tracy C. Coleman, is the contract purchaser." 251 Md. at 8.

\* \* \*

"We hold that resolution No. 6-380 of the Montgomery County Council granting the rezoning requested in zoning application No. E-955 was comprehensive in nature. The purpose of No. E-955, a sectional map amendment, was to rezone all of the land within the planning area boundaries to conform with the recommendations of the Kemp Mill-Four Corners Master Plan. While appellees are correct in saying that only 128.21 acres out of 4,263 acres were considered for reclassification, it is equally true that the area of the Master Plan is already eighty-nine per cent developed. Wholesale changes in existing zoning are not to be anticipated, but achieving an adjusted and coordinated development of the area might require selective revision. The fact that few changes were made does not affect the comprehensive nature of the plan; otherwise it would be difficult to have such a plan in a developed area. The plan covers a substantial area; it was approved by the technical staff and Planning Board of the Park and Planning Commission; and it was given careful consideration and adopted after extensive study." 251 Md. at 10-11.

Since we have satisfied ourselves that Resolution 7-797 was not a local amendment covering two tracts as the court below determined, but rather a sectional plan amendment and thus comprehensive rezoning, we turn to the question

whether the rezoning bore a substantial relationship to the public health, comfort, order, safety, convenience, morals and general welfare. If it did, the rezoning enjoys a strong presumption of validity and correctness, *Montgomery County Council v. Leizman, supra,* 268 Md. at 622; *Norbeck Village Joint Venture v. Montgomery County Council, supra,* 254 Md. at 66. Indeed it is entitled to the same presumption of correctness as that enjoyed by an original zoning, and persons attacking the correctness of the classification have a heavy burden in overcoming the presumption of its validity, *Scull v. Coleman, supra,* 251 Md. at 10. *Compare Carl M. Freeman Associates, Inc. v. State Roads Comm'n,* 252 Md. 319, 329, 250 A. 2d 250, 255 (1969).

Under the view which the trial court took of the case there was no need for it to meet the question whether Resolution 7-797 bore a reasonable relationship to the general welfare. As a consequence, there has yet to be a judicial determination of this issue.

On 27 April 1972, the Montgomery County Planning Board of the Maryland-National Capital Park and Planning Commission adopted the report and recommendation of the technical staff that Application F-805 be approved as submitted.

The report incorporated the following comments:

> "The most dominant open-space feature shown in the Master Plan is the Great Seneca Park which follows Great Seneca Creek and extends through the Gaithersburg Planning Area from a point north of the Planning Area to the Potomac River. The portion of Great Seneca Park south of Maryland Route 355 is to be acquired by the state. The remaining portion of the park north of Route 355, is to be acquired by The Maryland-National Capital Park and Planning Commission. The subject parcels, therefore, have been segregated from the remaining portion of the Gaithersburg Planning Area and made a part of this sectional map amendment so as to bring those lands

within the Regional District, adjacent to the Great Seneca Park, into conformity with the Master Plan. For the most part, the classifications requested, in conformance with the Plan, are a decrease in intensity, to assure the preservation of the Great Seneca Park by allowing only low-intensity development nearby. In addition, the parkland is the *only* wedge between the two corridor cities of Gaithersburg and Germantown. Thus the only way to preserve the 'corridor city concept' is to prohibit the encroachment of high-density uses between Gaithersburg and Germantown by low-intensity development near the park so that the two 'cities' do not merge. For these reasons the staff recommends the approval of this sectional map amendment." (Emphasis in original.)

Early on, we quoted in some detail the preamble to Resolution 7-797, as adopted by the Council, much of which is in the same vein: that the dominant motive was to implement the wedges and corridors concept of the Master Plan and preserve the open space in and adjacent to Great Seneca Park.

We have examined with care the testimony at the public hearing before the Council. It was undisputed that the Great Seneca Creek watershed is the County's largest, and that Great Seneca Park will provide a green wedge along the creek between Germantown and Gaithersburg. While there was criticism of the proposed reclassification of the Anderson and Kunlo Tracts, it took the form of questioning whether more intensive development would in fact increase the run-off of surface waters, and whether the fulfillment of a need for moderate cost housing would be further retarded.

Only one witness, the Trustees' expert, opposed the adoption of the proposed reclassification on the ground that it bore no relation to the general welfare. He categorically denied that it did, without giving reasons. Ranged on the other side were a baker's dozen of property owners,

conservationists, and representatives of community associations who addressed themselves to considerations of open space, recreation, ecology and the like. We have repeatedly held that an expert's opinion is of no greater probative value than the soundness of his reasons given therefor will warrant, *A. H. Smith Sand & Gravel Co. v. Department of Water Resources*, 270 Md. 652, 313 A. 2d 820 (1974); *Surkovich v. Doub*, 258 Md. 263, 265 A. 2d 447 (1970); *Westview Park Imp. & Civic Ass'n v. Hayes*, 256 Md. 575, 261 A. 2d 164 (1970); *Miller v. Abrahams*, 239 Md. 263, 211 A. 2d 309 (1965).

While both District Land and the Trustees in their appeals to the lower court challenged the idea that the rezoning bore a reasonable relation to the general welfare, in the briefs which they filed there and at argument before us they seek to skirt the issue by relying on the notion that the Council acted in bad faith in its effort to achieve an improper purpose and thus reached a result which was both arbitrary and discriminatory. This argument must fail if we confine ourselves to a consideration of only that which was properly before the trial court, a problem to be hereinafter considered. Having concluded that the reclassification was comprehensive rezoning, District Land and the Trustees failed completely to meet the heavy burden which was theirs. The record is simply devoid of any solid evidence on which can be predicated a contention that the rezoning bore no substantial relation to the general public welfare.

We now turn to a consideration of two other matters: one, a contention advanced by the Trustees, the other, a contention made by District Land.

It is well settled that the judicial branch of government cannot institute an inquiry into the motives of the legislature in the enactment of laws, lest the legislature be subordinated to the courts, *Hammond v. Lancaster*, 194 Md. 462, 476, 71 A. 2d 474, 480 (1950); 2 J. Dillon, Municipal Corporations § 580, at 914-15 (5th ed. 1911). And while Dillon goes on to say that the analogy should not be applied to its fullest extent to municipal corporations when powers are used fraudulently, only a scattering of cases share the

Dillon view, *see* C. Rhyne, Municipal Law § 9-4, at 229-30 (1957) and cases collected in n. 42 and n. 49.

We think the better view is that stated by Rhyne, *supra,* § 9-4, at 229:

> "As a general rule, the motives, wisdom or propriety of a municipal governing body in passing an ordinance are not subject to judicial inquiry. . . . In addition, individual council members and other city officials may not testify as to the motives actuating council action, as recorded in its minutes, nor may they testify as to what was intended or meant by an adopted measure."

A similar view is taken in 5 E. McQuillin, Municipal Corporations §§ 16.90 and 16.91, at 287-94 (3d ed. 1969 Rev. Vol.).

The same principle applies to zoning ordinances, which are presumed to be valid. As a consequence, courts will not pass on the wisdom of such measures. Rhyne, *supra* § 32-4, at 829-30, citing *Walker v. Board of County Comm'rs of Talbot County,* 208 Md. 72, 116 A. 2d 393 (1955); *Wakefield v. Kraft,* 202 Md. 136, 96 A. 2d 27 (1953); to the same effect, 8A E. McQuillin §§ 25.278 and 25.279, at 265-284 (3d ed. 1965 Rev. Vol.). *See also* Annot., 71 A.L.R.2d 568 (1960); Annot., 32 A.L.R. 1517 (1924).

The Trustees seize upon some language in *Aspen Hill Venture v. Montgomery County,* 265 Md. 303, 289 A. 2d 303 (1972):

> "This Court has many times held that upon appeal the Circuit Court in its review of the evidence is bound by the record made before the governmental body from which the appeal is taken. *Suburban Properties, Inc. v. Rockville,* 241 Md. 1, 6, 215 A. 2d 200 (1965); *Board of Commissioners v. Meltzer,* 239 Md. 144, 156, 210 A. 2d 505 (1965) and *Bishop v. Board of Commissioners,* 230 Md. 494, 501, [187 A. 2d 851] (1963). However, these decisions are directed to matters which would enhance or

> diminish the evidence supporting or challenging the application, such as evidentiary matters bearing on mistake or change or need and were not, in our opinion, intended as authority to exclude matters of public record which directly relate to the arbitrary, capricious or discriminatory quality of the conduct of the zoning authority which affects the property of the applicant. . . ." 265 Md. at 316-17.

Taking this as their point of departure, the Trustees embarked on deposing eight State officials, and in delving into their correspondence, in an effort to show that the down-zoning of the Kunlo Tract was intended to depress the price in the event the tract was acquired for incorporation into Great Seneca Park. While it only partially affects the result which we reach, we think the Trustees' reliance on *Aspen Hill* was misplaced, as these depositions and papers were evidentiary matters not of public record. We therefore hold that the action of the court below in admitting and considering the depositions and exhibits was erroneous.

The language in *Aspen Hill* must be considered against its facts. There, the same District Council which had denied commercial zoning to the appellant's land on the basis of lack of need, granted it to an adjacent tract 60 days later. What we held to be admissible in *Aspen Hill* was a public record — the subsequent action of the zoning authority — from which a valid inference of arbitrariness or capriciousness could be drawn.

Maryland Rule B 10, on which the court relied, provides that in appeals from administrative agencies, "Additional evidence may be allowed when permitted by law." The short of it is that in the absence of proof of fraud, which was neither alleged nor proved here, the evidence which the court allowed would be nowhere permitted by law.

At argument before us, the Trustees contended that even if the *motive* of the legislative body could not be considered, its *purpose* could be. While there is a suggestion of support for this in 5 E. McQuillin, *supra*, § 16.91, at 291-92, this principle is more likely to be invoked in considering

questions of statutory construction, where legislative purpose may be germane to a determination of reasonableness or constitutionality, as was the case in *Hammond v. Lancaster, supra,* 194 Md. 462.

The second point is that raised by District Land, which would have us review the lower court's conclusion that District Land had no vested right in the R-20 zoning classification which the property enjoyed at the time of purchase. District Land rests its contention on the spending of more than $1,000,000.00 on studies and plans for the development of the property, together with the issuance of a valid building permit. We have held that the obtention of a building permit creates no vested right in an existing zoning classification unless substantial construction has been undertaken in reliance thereon, *Rockville Fuel & Feed Co. v. City of Gaithersburg,* 266 Md. 117, 291 A. 2d 672 (1972) and that possession of a building permit, taken together with the payment of a high price in reliance on existing zoning, and with substantial expenditures for architectural fees creates no vested right in the absence of actual construction, *Ross v. Montgomery County,* 252 Md. 497, 250 A. 2d 635 (1969). *See also People's Counsel, Public Service Comm'n v. Public Service Comm'n,* 259 Md. 409, 270 A. 2d 105 (1970) and *Richmond Corp. v. Board of County Comm'rs,* 254 Md. 244, 255 A. 2d 398 (1969). We remain unpersuaded by the argument that the rule is less onerous elsewhere, *see* 2 Rathkopf, The Law of Zoning and Planning, ch. 57, § 3 (3d ed. 1972) and cases there cited.

Because we are satisfied that Resolution 7-797 amounted to comprehensive rezoning and was validly enacted, we shall reverse.

*Order reversed; Resolution 7-797 reinstated; costs to be paid by appellees.*