OVERTON ET AL. *v.* BOARD OF COUNTY COMMISSIONERS OF PRINCE GEORGE'S COUNTY ET AL.

[No. 200, September Term, 1960.]

*Decided May 3, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, MARBURY and SYBERT, JJ.

*H. S. Garber* and *James F. Vance,* with whom were *William C. Overton, Jr., Earl W. Williamson* and *Thomas A. Delaney* on the brief, for appellants.

*Russell W. Shipley,* with whom were *Robert B. Mathias* and *Lionell M. Lockhart* on the brief, for Board of County Commissioners of Prince George's County, one of the appellees.

*Marion E. West,* with whom were *West & Venables* on the brief, for Helen K. Townshend, Samuel S. Bevard et al., the other appellees.

SYBERT, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Prince George's County affirming an order of the County Commissioners of Prince George's County, acting as the District Council for the Maryland-Washington Regional District of that County, rezoning two contiguous tracts of land in Oxon Hill from R-R (Rural-Residential) to R-18 (Multiple Family, Low Density Residential). This action was recommended by the Planning Board of the Maryland-National Capital Park and Planning Commission, whose duty it is to make recommendations to the District Council on rezoning petitions. The applications for rezoning the two parcels were opposed by the appellants, who are home owners in nearby developments.

The properties in question together constitute a narrow strip of land of 39.15 acres fronting approximately 6,300 feet along Indian Head Highway. The applications (by Townshend, et al. and by Bevard, et al.) were handled together before the District Council and in the trial court and will be

referred to as one tract of land hereinafter. The strip varies in width from zero to about 500 feet, with a substantial portion having considerably less than the maximum width. The property runs in a north-south direction and is bounded on the south by Kerby Hill Road, on the east by Indian Head Highway and a small parcel zoned R-R, and on the west and north by Carey Branch. On the westerly side of the stream, from Kerby Hill Road northward for approximately 4,800 feet, is a subdivision development of cottage type dwellings zoned R-R. The land east of the tract, across the highway, is zoned R-55 (One Family, Detached Residential). South of the tract, on the other side of Kerby Hill Road, is located a small parcel of land zoned C-2 (General Commercial).

The subject property is part of an area which was brought into the Maryland-Washington Regional District by statute in 1957. The District Council, in the comprehensive zoning of the area, placed the property in the R-R zone, denying a petition by the owners at that time to have it zoned C-2. The current application for rezoning, filed in 1959, led to a reconsideration by the Planning Board of this particular parcel, and the Board recommended to the District Council that the property be approved for rezoning to the R-18 classification (which would permit low density apartment building use), on the ground of mistake in the original zoning. The recommendation was adopted by the District Council, after notice and hearing, and, on appeal by the appellants, the rezoning was approved by the Circuit Court for Prince George's County. It is from that decision that this appeal is taken.

The appellants attack the validity of the rezoning upon the following grounds: (1) that there was no substantial evidence of a basic mistake in the original zoning or of a substantial change in the character of the neighborhood to warrant the reclassification; (2) that appellee property owners made no reasonable showing that the R-R zoning of their land would deprive them of reasonable use of it; (3) that the action of the District Council was arbitrary in that the Council failed to heed readily foreseeable conditions which would result from

rezoning the parcel from R-R to R-18, such as overcrowding of schools, traffic congestion and other factors.

In our view of this case, the crucial question involved is whether a mistake was made in the original classification of the subject property, and therefore this issue is the only one which we need consider in detail. As appellants properly point out and as this Court has so often stated, in order to sustain a rezoning order, there must be a showing (1) of a mistake in the original zoning, or (2) that the character of the neighborhood has changed to such an extent that a change in the zoning classification is justified. *Baltimore v. N. A. A. C. P.,* 221 Md. 329, 157 A. 2d 433 (1960); *Muhly v. County Council,* 218 Md. 543, 147 A. 2d 735 (1959). Appellees made no claim that there had been any substantial change in the character of the neighborhood, and therefore that question is not involved here.

In the current applications the appellee property owners originally requested rezoning from R-R to R-10 (Multiple Family, Medium Density Residential). At the hearing before the District Council, appellants introduced a petition signed by 246 persons living in the area west of the subject property objecting to its rezoning for apartment use because "rezoning would not be in keeping with the character of the area"; there was "no change in the character of the area to justify this rezoning"; overcrowding of the public schools would result, and dangerous traffic hazards would become much worse. One of the appellants, who was president of the neighborhood citizens' association, testified that the association's membership opposed the rezoning for apartment use. Two other appellants testified in opposition to the applications, and a telegram and three letters from nearby residents were introduced for the same purpose.

The record shows that the applications were studied and considered carefully by the Planning Board of the Maryland-National Capital Park and Planning Commission, the agency which is charged with the duties of planning, and of making recommendations to the District Council with respect to rezoning requests, in the county. The report of the technical

staff of the Planning Board, admitted in evidence, reviewed the situation in detail. It is stated that the "subject property is peculiar in many respects," and that the applicants are faced with several problems in connection with the development thereof. Among these was the fact that the major portion of the property is lower in elevation than adjoining property and Indian Head Highway, thus subjecting the low-lying parts to flooding from Carey Branch, which bounds the property on the west and north. This, it is pointed out, causes a sizeable drainage problem which has been aggravated in recent years by the development of nearby subdivisions. The report adds, "Because of this drainage problem, the developer will, of necessity, have to channel the Carey Branch in various places. He will also have to locate any proposed structures with the utmost care so as to leave as much open space as possible in order to protect against any future flooding of portions of the subject property." It is stated that the partial channelization of Carey Branch would be beneficial to adjoining property owners who are in danger of having their rear yards slowly eroded away by the stream.

The technical staff report goes on to say that because of the low elevation and drainage problems, an extensive amount of land fill will be required. It notes that a large amount of fill dirt is now on the property, most of it deposited thereon when the development across Carey Branch was taking place. It is stated that the front building restriction line for this property is 106 feet from the edge of pavement of the near lane of Indian Head Highway.

In explanation of the conclusion that the original classification of the property was erroneous, the report states: "After two public hearings, the District Council adopted the current zoning map for this area in November, 1957. At these hearings the applicant requested that this property be placed in the C-2 zone. The staff indicated that a well-integrated shopping area could not be developed on such a long narrow strip of land nor could we see justification for a strip of commercial zoning over a mile long with a minimum depth and, therefore, recommended the subject property for residential use.

However, due to the limited time allotted for the preparation of the zoning map for this area, no consideration was given to what type of residential development should be proposed for the subject property. Consequently, when the zoning map was adopted, the subject property was placed in the R-R Zone. The instant petitions have provided an opportunity for the staff to do a more detailed study on this property. The availability of more factual information (topography, access, drainage, etc.) has enabled us to determine the type of residential development which we believe should be recommended for the subject property."

The staff report concludes that the property, "does not appear to be ideally suited for single-family detached residential development", but is suitable for apartment development, that this use "would not be contrary to the best interests and general welfare of the public and would have the least adverse effect upon the adjoining properties in the area", and that the reclassification would tend to promote the orderly development of the neighborhood. However, because of the height, bulk and density permitted by the R-10 classification applied for, the staff recommended that R-10 be denied, but that R-18, permitting a less intense use, be granted. These recommendations were approved unanimously by the Planning Board.

The only real estate experts who testified at the hearing were Mr. Rocks, a builder in the area and the developer of 438 houses in the existing subdivision to the west, and Mr. Giauque, the chief planning engineer of the Park and Planning Commission. Mr. Rocks testified that the subject property was an eyesore and a "junk catcher", and that in his expert opinion as a developer it would not be feasible to build houses on it because of its serious topographical and drainage problems. He recommended low density apartment house use. Mr. Giauque supported the suggested use. Because of the drainage problem it was his view that the Park and Planning Commission would not be interested in the land for public use "if it were given to us". However, he testified that if the apartment buildings were constructed on the higher

areas and the stream were properly channelized to prevent flooding of the lower areas, which could be used for parking and recreational purposes, apartment use would be feasible. In explaining why the technical staff was now recommending a change from the original R-R classification in 1957, Mr. Giauque said "* * * at that time we were concerned with the square miles instead of acres. * * * Our objective there was to get something in the form of a zoning map down to the Board so they in turn could hold public hearings with a view to adopting a zoning map and establishing zoning control."

In affirming the order of the District Council in granting the R-18 classification, Judge Gray in the lower court found the matter to be at least fairly debatable and the action of the Council not to be arbitrary, unreasonable or illegal.

The basic rules governing the exercise of the legislative function of rezoning, and the scope of judicial review thereof, have been enunciated in a long line of cases in this Court. They were summarized by Chief Judge Brune, speaking for the Court in the recent case of *West Ridge, Inc. v. McNamara,* 222 Md. 448, 160 A. 2d 907 (1960). Judge Brune said (at page 454 of 222 Md.) :

> "In the trial court as in this Court, the chief question was and is whether the action of the County Commissioners in rezoning part of the West Ridge property as Commercial was or was not within the proper exercise of their legislative power. There have been so many cases in this Court in which the basic test has been stated that we think it unnecessary to do more than refer to four cases (three of them. very recent) and to the cases therein cited. See *Eckes v. Board of Zoning Appeals,* 209 Md. 432, 121 A. 2d 249; *City of Baltimore v. N. A. A. C. P.,* 221 Md. 329, 157 A. 2d 433; *County Commissioners of Howard County v. Merryman,* 222 Md. 314, 159 A. 2d 854; and *Pressman v. City of Baltimore,* 222 Md. 330, 160 A. 2d 379. These cases recognize the famil-- iar rules that in the case of piecemeal rezoning, there must be a showing of either an error in original com-

prehensive zoning or such a change in conditions as to warrant rezoning, that if either of these is shown, or if there are facts from which the legislative body could reasonably have made such a finding (i.e., that the matter is at least fairly debatable), the courts may not interfere with the legislative action, and that since there is a presumption in favor of the validity of the legislative action, the burden is on those objecting to the rezoning to show the absence of error in the original zoning and the lack of any such change in conditions as would warrant the rezoning."

It is obvious in the instant case that there was ample evidence before the legislative body from which it could find mistake in the original comprehensive zoning. The Council could have given weight to the testimony of the real estate experts that difficulties of terrain and drainage made the property unsuitable for detached dwellings and that low density apartments appeared to be the best feasible use. *Kracke v. Weinberg,* 197 Md. 339, 79 A. 2d 387 (1951). The Council may have determined, from all of the evidence before it, that the reclassification would bear a substantial relationship to the public health, safety and general welfare, and would be more in harmony with the comprehensive zoning plan than the original classification. *Offutt v. Bd. of Zoning Appeals,* 204 Md. 551, 105 A. 2d 219 (1954).

In any event, the evidence compels the conclusion that the validity of the action of the District Council is at least reasonably and fairly debatable. In such a case the courts cannot, even if they would, overturn that action by substituting their judgment for that of the legislative agency. *Reese v. Mandel,* 224 Md. 121, 167 A. 2d 111 (1961).

The remaining questions raised by appellants need not be considered by us, since they would be unavailing as against a rezoning based upon a finding of original error.

*Order affirmed, appellants to pay the costs.*