STEVENS *v.* BENNETT

[No. 216, September Term, 1963.]

*Decided April 9, 1964.*

The cause was argued before HENDERSON, HAMMOND, PRES-
COTT, HORNEY and SYBERT, JJ.

*Walter B. Dorsey,* with whom were *Joseph D. Weiner* and
*Paul J. Bailey* on the brief, for the appellant.

No brief and no appearance for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant, who alleges that in 1939 he made an oral
promise to his parents to work, maintain and improve their farm
in St. Mary's County and support them from its produce as
long as they lived, in return for their oral promise that if he
would do this they would will him the farm outright, was ag-
grieved by the will of his mother (surviving tenant by the en-
tirety) probated in 1957, which left him only a life estate in
the farm, with remainder to his sister, the appellee, and an
obligation to pay a judgment, a lien on the farm, held by the
sister.

In 1963 he filed an amended bill against his sister (his
original bill had been filed in 1962 and held defective on de-
murrer), asking that she be decreed to hold the farm as trustee
for him and ordered to convey it to him outright. A demurrer
to the amended bill was sustained without leave to amend on
the ground that it appeared from the face of the bill that limi-
tations barred the granting of the relief sought.

In this Court the son contends that an equity court ap-
plies the statute of limitations as would a court of law only

where the complainant had a concurrent legal remedy, that he had no such analogous remedy and, so, limitations should not have been held a bar in equity and, in any event, his delay in filing suit for five and one-half years after the probate of his mother's will, when he first learned that the farm had not been left him outright, was induced by his sister.

The significant well-pleaded allegations of fact are: the oral contract relied on was made in 1939 when his parents were unable to continue to work the farm; the son married in 1940 and lived with the parents until 1944 when he built and moved into a small house on the farm; the father died in 1945; the son continued to work the farm as he had done since 1939 and from his efforts supported his mother and gave her companionship; the farm originally was poor and he put back into it the excess proceeds in order to improve it; all this was in reliance on the contract; the farm consists of eighty cleared and one hundred forty wooded acres, and after his mother's death in December 1956 (her will having been probated shortly thereafter), the land was appraised at $6,562.50 and the buildings, including a tobacco barn and a cattle and hay barn (which the son had built in 1952 and 1956, respectively) at $3,470; after their mother's death, the son told his sister of his understanding that the farm was to be willed to him outright and that he would not pay the judgment she held, and she replied she had no great interest in the farm and would convey it to him in fee if he paid the judgment; thereafter, she turned the judgment over to an attorney for collection and the son consulted a lawyer to whom he related the facts as to the obtention of the judgment in preparation for the defense of the suit the sister's lawyer had instituted to enforce payment; on June 21, 1962, the son met his lawyer to discuss the suit and, for the first time, advised him of his claim of an oral contract under which he was to receive the farm.

As we see it, the case turns on the applicability of limitations. There is no substance to the son's claim that his sister induced his delay in filing the suit now before us. On his own allegations she did not agree to transfer her remainder interest in the farm unless he paid the judgment. He has not yet done so and, even after she sued him to collect the judgment, he did

not, until 1962, some five and one-half years after the probate of his mother's will, reveal to his lawyer his claim of a contract right to the farm. On the merits the son is right in his contention that an oral contract to will real estate in return for services to be rendered by the promisee will be enforced in equity if the services have been performed, provided the terms of the contract are shown to be certain and definite and are affirmatively established by clear and convincing testimony. *Hanson v. Urner,* 206 Md. 324, 333; *Semmes v. Worthington,* 38 Md. 298, 318. And, where the terms of the contract are to will real property in fee, a devise of a life estate is not compliance with the contract. *Ledingham v. Bayless,* 218 Md. 108, 118.

The authorities indicate that even when the remedy for a claimed right is only in equity the period of limitations most nearly apposite at law will be invoked by an equity court, provided there is not present a more compelling equitable reason—such as fraud or other inequitable conduct which would cause injustice if the bar were interposed—why the action should not be barred. 34 Am. Jur. *Limitation of Actions* Sec. 60; 53 C. J. S. *Limitation of Action* Sec. 36; 30 C. J. S. *Equity* Sec. 131; *Wood, Limitations* (4th Ed.), Sec. 59; 79 U. of Pa. L. Rev. 341. This Court has suggested that it is in accord. *Wilhelm v. Caylor,* 32 Md. 151, 157-158. Judge Henderson, for the Court, said in *Berman v. Leckner,* 188 Md. 321, 328: "There is no doubt that limitations will apply by analogy, to proceedings in equity as well as to actions at law, particularly where the jurisdiction is concurrent."

In the case before us there was neither fraud nor other inequitable circumstances or reasons to prevent the application of the seemingly general rule, but we find it unnecessary to rest our decision on this ground because we think the appellant had a remedy at law analogous to and concurrent with the one he sought in equity, and it is clear that in such case equity follows the law and applies the period of limitations which would operate in the analogous suit at law. *Teackle v. Gibson,* 8 Md. 70, 87. See also: *Cargill v. Brady,* 231 Md. 455, 457; *Gloyd v. Talbott,* 221 Md. 179, 186; *Rettaliata v. Sullivan,* 208 Md. 617, 621; *Brashears v. Collison,* 207 Md. 339, 353; *Maskell v. Hill,* 189 Md. 327, 337; *Grandberg v. Bernard,* 184

Md. 608, 611. *Cf. Hungerford v. Hungerford,* 223 Md. 316, in which the demurrer did not raise the defense of limitations but only laches and the trial judge passed on laches only.

It is true that the son could not have sued at law for breach of the contract to devise real estate and collect as damages the value of the farm at his mother's death, since the contract was oral and so within the Statute of Frauds, and his performance of his part of the bargain does not take the agreement out of the statute because the doctrine of part performance, even when the acts relied on are attributable to performance of the contract sued on, is cognizable in equity only. *Hamilton v. Thirston,* 93 Md. 213, 218-219; *Cline v. Fountain Rock Co., Inc.,* 210 Md. 78, 88-89; *Grant v. Curtin,* 199 Md. 363. Nevertheless, the son could have sued at law to recover on quantum meruit the value of his services rendered and his contributions made pursuant to the oral contract, which was unenforceable at law because it was not in writing. *Hamilton v. Thirston, supra,* p. 220; *Grant v. Curtin, supra,* p. 368; *Cline v. Fountain Rock Co., Inc., supra,* p. 90. *Cf. Bright v. Ganas,* 171 Md. 493. The measure of damages it would appear would have been the value of the services performed and the contributions made up to, but not in excess of, the value of the property promised to be willed, less, of course, the value of that which has been received on account. *Cline v. Fountain Rock Co., Inc., supra,* pp. 89-90; *Bright v. Ganas, supra,* p. 497; 57 Am. Jur. *Wills* Sec. 179; 94 C. J. S. *Wills* Sec. 123 (c), p. 891; 2 *Corbin, Contracts,* Secs. 322, 327, 328; 2 *Williston on Contracts* (Rev. Ed.), Sec. 534, p. 1550; Annotation "Agreement to Leave Property to Another," 69 A. L. R. 14, 90-101.

The authorities cited say that the plaintiff may prove the oral contract and the value of that which had been promised to be willed for the purpose of aiding in the determination of the value received by him who promised to will the property, even though the use in this way of the express agreement comes rather close to its enforcement as such. *Corbin, op. cit. supra,* Secs. 327, 328; *Cline v. Fountain Rock Co., Inc., supra; Bright v. Ganas, supra.*

The statute of limitations in actions of quantum meruit for services rendered and contributions given pursuant to an oral

contract to will property, unenforceable because within the Statute of Frauds, begins to run at the death of the one promising to make the agreed will. *Corbin, op. cit. supra,* Sec. 329; 94 C. J. S. *Wills* Sec. 123 a, p. 888; 57 Am. Jur. *Wills* Sec. 181; *Hamilton v. Thirston,* 94 Md. 253, 256 (as interpreted by Chief Judge Marbury for the Court, in *Grant v. Curtin* at pp. 368-370 of 199 Md.).

In the case at bar a suit at law would have had to be filed, to be timely, within three years of the mother's death (or, it may be assumed, without deciding, at least within three years of the probate of her will), and the present equity suit, seeking to redress the same claimed wrong that a suit at law would have sought to redress, was not filed until about five years after the probate of the mother's will. We think the chancellor did not err in holding the son's claim so stale as to be barred by limitations.

*Order affirmed, with costs.*