HIMMELHEBER *v.* CHARNOCK, ET AL.

[No. 435, September Term, 1969.]

*Decided July 8, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Robert C. Verderaime,* with whom were *Verderaime & DuBois* on the brief, for appellant.

*Fred E. Waldrop* for appellees.

BARNES, J., delivered the opinion of the Court.

The two principal questions involved in this zoning appeal are whether or not the Circuit Court for Baltimore County (Raine, J.) erred in its order of December 23, 1969, affirming the order of July 22, 1969, of the County Board of Appeals of Baltimore County (Board), granting a zoning reclassification of the subject property from R-10 and R-20 (residential) to B.L. (business-local) upon the petition of Ella L. Charnock (Harold Roll, et al., contract purchaser) because (1) there was no legally suffi-

cient evidence before the Board to support its findings of substantial change in the character of the neighborhood and (2) the uncontradicted evidence before the Board established that the proposed reclassification "could have an almost disastrous effect" on local traffic conditions in peak periods.

The subject property consists of approximately 4.7 acres of land situated in the Second Election District, Baltimore County, on the south side of Liberty Road approximately 265 feet east of its intersection with Marriottsville Road. The tract is rectangular in shape, having a frontage on Liberty Road of about 270 feet and having a depth ranging between 742 feet and 786 feet. Immediately to the west of the subject property is a newly developed Esso Service Center, being on the southeast corner of Liberty Road and Marriottsville Road. Across Marriottsville Road from the Esso station, on the southwest corner of the intersection, is a Flying "A" gas station. To the east of the subject property is a Baltimore Gas and Electric Company large tower transmission line right-of-way and the Beth El Cemetery. Directly across from the subject property, on the north side of Liberty Road, is a fully developed shopping center.

In October 1968, Ella L. Charnock (Harold Roll, et al., contract purchaser) filed a petition for reclassification of the subject property from the then existing R-10 and R-20 zones to a B.L. zone in order to develop a small neighborhood shopping center on the front of this tract and a convalescent home on the rear portion. After a hearing on the petition was held on November 14, 1968, the Deputy Zoning Commissioner for Baltimore County passed an order granting the reclassification sought for the subject property. From that order, dated December 19, 1968, Henry F. Himmelheber, a neighborhood resident and appellant in this case, took an appeal to the Board.

On May 28, 1969, the Board conducted its own full hearing on the petition for reclassification of the subject property. Testimony and other evidence presented on be-

half of the petitioner-appellee showed that adequate utilities would exist for the proposed development of the tract. Henry LeBrun, real estate appraiser and broker, testified for the petitioner-appellee that numerous changes had occurred in the area since the adoption of the master plan (Western District map) in 1962. He pointed out that the character of the general area, and particularly that of the subject property, had changed from quiet and rural to dense residential and commercial development. In particular, Mr. LeBrun testified to the recent development of the residential communities of Kings Park, Hearnwood, Forest Hills, Pikeswood and Wildwood in the general area. Approximately 2,000 feet east of the subject property, Mr. LeBrun showed three properties which had been reclassified to R.A. (residential-apartment) in 1966 and 1967, permitting the erection of a total of 2,300 apartment units. In the immediate vicinity of the subject property, he testified that in 1965 the Esso Service Center abutting the subject property was built and in 1964 the property directly across Liberty Road, where the shopping center now exists, was reclassified B.L.

The appellant, Mr. Himmelheber, did not deny the existence of these changes in the area, but rather contested the magnitude of their impact on the character of the immediate neighborhood of the subject property. The main thrust of his testimony and that of his expert witness, Eugene Clifford, Director of Traffic Engineering for Baltimore County, was that the proposed use of the subject property would create additional traffic congestion on Liberty Road. Mr. Clifford testified that Liberty Road was only two lanes in the vicinity of the property and that upon his calculations he believed that "[d]uring the peak period this [the proposed use of the subject property] could have an almost disastrous effect as far as capacity is concerned." However, on cross-examination he testified that such a neighborhood shopping center and convalescent home as proposed would primarily serve residents in the area and "would not draw traffic from a great distance away." Joseph D. Thompson, a traffic ex·

pert and witness for the petitioner-appellee, also testified that in his opinion the proposed use would serve "only local traffic."

On July 22, 1969, the Board affirmed the order of the Deputy Zoning Commissioner and ordered that the reclassification petition be granted, setting forth its reasons in an opinion rendered the same day. Upon the evidence produced at its hearing on the matter, the Board stated that it found the petitioner-appellee had "sufficiently demonstrated substantial change in the character of this neighborhood to warrant the reclassification as sought in this petition," and that "the use as proposed in this case would, in fact, primarily serve local residents within the existing traffic count and not draw traffic from any distance away from this property."

From the order of the Board granting the reclassification of the subject property Mr. Himmelheber took a timely appeal to the Circuit Court for Baltimore County. After a hearing, Judge Raine filed an opinion in which he indicated that the evidence before the Board on the two disputed issues, the change in the character of the neighborhood and the potential traffic problem, was such as to make both issues "fairly debatable." In accordance with his opinion, finding the issues fairly debatable and well considered by the Board, Judge Raine passed an order on December 30, 1969, affirming the Board's decision. From that order of December 30, 1969, a timely appeal was taken to this Court.

In our opinion, the lower court properly affirmed the decision of the Board in that there was sufficient evidence before the Board upon which it could reasonably find (1) that there had been a substantial change in the character of the neighborhood to warrant the reclassification as sought in the applicants' petition and (2) that the proposed use of the subject property would primarily serve local residents within the existing traffic on Liberty Road and not draw traffic from any distance away. We shall, therefore, affirm the order of December 30, 1969.

### (1)

As Judge Oppenheimer stated for the Court in *DePaul v. Board of County Commissioners for Prince George's County*, 237 Md. 221, 226, 205 A. 2d 805, 807 (1965):

> "We have held in many cases that the court, in reviewing the actions of zoning authorities, 'will not substitute its judgment for that of the authority unless the latter's action was arbitrary, capricious or illegal and that if the facts were sufficient to support the decision the question decided was fairly debatable and the decision must be upheld.' *Furnace Branch Co. v. Board*, 232 Md. 536, 540, 194 A. 2d 640 (1963) and cases therein cited. In *Jobar Corp. v. Rodgers Forge*, 236 Md. 106, 202 A. 2d 612 (1964), we said: 'We have stated time after time that it is not the function of the courts to zone or rezone, and the courts will not substitute their judgments for that of the expertise of the zoning officials.' 236 Md. at 120."

In examining the record in the present case we find more than ample evidence to sustain the Board's finding that the character of the neighborhood in which the subject property is situated has undergone substantial change in the years following the comprehensive zoning enacted in 1962. Both Mr. Thompson and Mr. LeBrun gave knowledgeable and uncontroverted testimony that the area in question has been subjected to increasing development and commercialization. Mr. LeBrun testified to several specific zoning changes in that direction along Liberty Road within between 2,000 to 3,000 feet of the subject property. In immediate proximity to the property, he testified that an abutting Esso Service Center had been built in 1965 and directly across Liberty Road the zoning authorities had permitted a shopping center to be constructed in 1964. Unlike *Wells v. Pierpont*, 253 Md. 554, 253 A. 2d 749 (1969) and *Kaslow v. Mayor & City Council of Rockville*, 236 Md. 159, 202 A. 2d 638 (1964), the

evidence in the present case demonstrates more than population growth and residential concentration in the subject area. There is undisputed evidence of reclassification of vicinal properties to commercial uses, including two such changes in contiguous properties. In our opinion, considering all of the changes and attendant circumstances as a whole, we have concluded that it is "fairly debatable" whether the neighborhood has acquired a new character warranting the reclassification of the subject property. Thus, under our prior decisions we should sustain the decision of the zoning authorities.

(2)

In regard to the alleged "almost disastrous effect" upon local traffic conditions, the evidence before the Board was conflicting. The well-qualified expert for the applicants testified that in his opinion the proposed use would serve "only local traffic," and this opinion is partially confirmed by the traffic expert of the protestants on cross-examination as we have indicated above. Here again, this issue was fairly debatable and the Courts should accordingly not disturb the decision of the Board on this issue. *DePaul v. Board of County Commissioners for Prince George's County, supra.*

> *Order of December 30, 1969,*
> *affirmed, the appellant to*
> *pay the costs.*