WILLIAM W. BOYCE ET AL. *v.* BERTHA SEMBLY ET AL.

[No. 153. September Term, 1974.]

*Decided March 7, 1975.*

---

44

The cause was argued before THOMPSON, DAVIDSON and LOWE, JJ.

*Ernest C. Trimble,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellants.

*Anne Kay Kramer* for appellees.

DAVIDSON, J., delivered the opinion of the Court. LOWE, J., concurs in the result and filed a concurring opinion at page 62 *infra.*

This case presents the narrow question of whether the County Council of Baltimore County (Council) committed basic and actual "mistake" or "error" as those interchangeable terms are used in zoning law, when on 24 March 1971 it adopted a comprehensive zoning map on which the subject property, consisting of 5.84 ± acres, was classified as D.R.-5.5 (Density Residential, 5.5 dwelling units per acre).

Most of the facts are not in dispute. The subject property, located in a community known as Lutherville, lies in an area bounded by Seminary Avenue on the north, the Harrisburg Expressway on the west, and the Baltimore Beltway on the

south. (See location map attached hereto.) It is roughly triangular in shape and fronts on the west side of Railroad Avenue approximately 480 feet south of its intersection with Seminary Avenue.

On the west side of Railroad Avenue, approximately 250 feet north of the subject property, there is a relatively small parcel of land, located at the corner of the southwest quadrant of the intersection of Railroad Avenue and Seminary Avenue, which was reclassified to the B.L. zone (Business, Local) by a local map amendment adopted subsequent to 1955, on which a Citgo service station has long been and still is in operation. In the northwest quadrant of the intersection there is also a comparatively small parcel of land zoned B.L. upon a portion of which a refinishing shop, called The Wood Butcher, was developed around 1960. A furniture store known as Leers, containing about 15,000 square feet, is presently under construction on the remaining portion of that B.L. zoned land. At the corner of the southeast quadrant of the intersection there exists still another relatively small parcel of land which was classified in the B.L. zone in 1955, upon a portion of which a small grocery store has been located for many years. Subsequent to 1955 a relatively small parcel of land adjoining this B.L. zoned tract on the south was reclassified from the then R.-10 zone (Residence, one or two family, lot area 10,000 square feet) to the B.L. zone. An office building has been developed on this B.L. zoned tract. Adjoining this B.L. zoned parcel on its south is a tract of land zoned D.R.-3.5 (Density Residential, 3.5 dwelling units per acre), a portion of which confronts the northern portion of the subject property.[1]

Moving south along the east side of Railroad Avenue and confronting the southern portion of the subject property there is a parcel of land which, subsequent to 1955, was reclassified by a local map amendment from the then R.-10 zone to the D.R.-16 zone (Density Residential, 16 dwelling units per acre). An apartment complex known as the Cardiff of Charles Apartments, consisting of 160 units, has

---

1. The record is devoid of any evidence showing the development, if any, existing on this parcel.

been developed on a portion of that tract. Lying between this D.R.-16 parcel and the Beltway, on the east side of the railroad right-of-way, there is a relatively large tract of land which, subsequent to 1955, was reclassified by a local map amendment from the then R.-10 zone to the B.R. zone (Business, Roadside). "Warehouse office storage"-type buildings have been developed on this parcel. The record further shows that the Lutherville Supply & Equipment Company, which sells heavy machinery, earth-movers and cranes, is also located on the land east of the subject property and across the railroad track. It is unclear, however, whether this business enterprise is located on the D.R.-16 zoned land or the B.R. zoned land.

The subject property, which is fairly level, has a low elevation lying approximately 15 to 20 feet below the roadbed of the Northern Central Railway, which adjoins Railroad Avenue on the east. It is bisected by the Roland Run Stream which traverses the subject property from north to south. That portion of the subject property lying to the west of Roland Run Stream is further bisected by a tributary of the Roland Run Stream which passes through that portion of the subject property from west to east. Parallel to Roland Run and its tributaries there are 10-foot-wide easements for utilities and sewers.

For 60 years a building materials and lumber supply yard, located on the southeastern sector of the subject property, has been in operation. This nonconforming use is still being carried on, with annual sales in 1971 of $1.5 million. At present, there are five frame buildings located on the southeastern portion of the subject property, all of which are 50 to 60 years old and in a "bad state of repair." Their utility for operation as a modern-day lumberyard is substantially impaired because none of them is designed to accommodate forklift trucks, necessitating the piling of lumber by hand. At one time a residence and a shed had been located on the southwestern portion of the subject property, but those buildings have been razed. Currently, that portion of the tract has no development upon it.

At present, access to the subject property is limited to

Railroad Avenue, which runs along a small portion of the northeastern sector of the subject property and then deadends. That street has a 20-foot right-of-way and a paved width of 15 feet. The Northern Central Railway right-of-way which adjoins Railroad Avenue on the east, as well as a portion of the southeastern sector of the subject property, contains one railroad track over which two to four freight trains travel daily. School Lane appears to provide access to the northwestern section of the subject property. The 20-foot-wide pavement of that road ends, however, 60 feet from the northern boundary of the subject property.

The subject property was classified in the R.-6 zone (Residence, one or two family, lot area 6,000 square feet), which was the then equivalent of the D.R.-5.5 zone, by the comprehensive zoning map which preceded that of 1971. On 10 September 1970 the Zoning Commissioner (Commissioner) of Baltimore County granted an application requesting reclassification of the subject property to the B.R. zone. An appeal was taken to the Board of Appeals (Board). While that appeal was pending, the Council was considering the adoption of a new comprehensive zoning map. The Log of Issues and Recommendations to the Council, Relative to the Central Sector, used at the public hearing preceding adoption of the 1971 comprehensive zoning map, indicates that the existing zoning of the subject property was R.-6; that the Planning Board recommended that the subject property be designated D.R.-5.5; that the property owner was requesting a B.R. zoning classification in a local map amendment case then pending; and that a proposed Council resolution recommended D.R.-16 zoning for the subject tract. On 24 March 1971 the Council adopted a comprehensive zoning map on which the subject property was classified in the D.R.-5.5 zone.

Within three weeks of the adoption of the comprehensive zoning map [2] the owner of the property and the contract

2. The date upon which the zoning application was filed does not appear in the record. Provisions of Baltimore County Code (1972 Cum. Supp.) § 22-22(c) and (d) support an inference that the application was filed prior to 16 April 1971.

purchaser of the tract [hereinafter called applicants] petitioned the Commissioner for a reclassification of the subject property to the B.R. zone, alleging that there was error in the comprehensive zoning map with respect to the subject property. After a hearing the Commissioner concluded that the comprehensive zoning map was in error in classifying the subject property in the D.R.-5.5 zone. On 8 February 1972 he granted the requested reclassification to the B.R. zone. An appeal was taken to the Board and, on 6 September 1972, the action of the Commissioner was reversed in part and affirmed in part by the Board which believed that the applicants had "met the burden of proof in showing error in original zoning on that portion of the petitioned tract southeastwardly of the stream, but not on that portion northwestwardly of the stream." Accordingly, the Board granted reclassification of the 2.3 ± acres of the subject property, which lie on the southeast side of the center line of Roland Run to the B.R. zone, and retained the remaining 3.54 ± acres of the subject property, which lie on the northwest side of the center line of Roland Run, in the D.R.-5.5 zone.

The protestants, neighboring property owners, filed an appeal in the Circuit Court for Baltimore County from that portion of the order which reclassified the southeastern portion of the tract to the B.R. zone. On 29 January 1974 Judge Lester Barrett found that "[t]he testimony of the Protestants in this case supported the correctness of the County Council's comprehensive zoning of March 1971" and that "the testimony produced by the Petitioner-Appellee is not sufficient to overcome the presumption of correctness which attaches with the adoption of a comprehensive zoning map by the County Council." An order was entered reversing that portion of the Board's order which had reclassified the 2.3 ± acres lying on the southeastern portion of the subject property to the B.R. zone. It is from this order that the applicants appeal.

The applicants initially contend that the trial court applied an improper standard in determining whether the action of the Board should be reversed. They point out that

while the trial court found the evidence adduced by the protestants supported the correctness of the 1971 comprehensive zoning and that the evidence adduced by the applicants was insufficient to overcome the presumption of correctness which attaches to a comprehensive rezoning, it did not determine whether the action of the Board was arbitrary and discriminatory or "fairly debatable." The applicants conclude that under these circumstances the trial court impermissibly weighed the evidence and substituted its judgment for that of the Board. We do not agree.

The applicable test for determining the scope of judicial review in a zoning case alleging error in a comprehensive rezoning has recently been restated in *Trainer v. Lipchin*, 269 Md. 667, 672-73, 309 A. 2d 471, 474 (1973), in which the Court of Appeals, quoting from *Stratakis v. Beauchamp*, 268 Md. 643, 652-53, 304 A. 2d 244, 249 (1973), said:

> " '. . . Where a legislative body, or a board of county officials, pursuant to authority conferred upon it, has granted a rezoning of property, the question on judicial review is whether or not such action is arbitrary and discriminatory or fairly debatable. We shall follow that test in considering this appeal.
>
> " 'While, in recent years, we have had occasion to enunciate a number of important principles applicable to the law of zoning, perhaps none is more rudimentary than the strong presumption of the correctness of original zoning and of comprehensive rezoning. To sustain a piecemeal change in circumstances such as those present here, *strong* evidence of mistake in the original zoning or comprehensive rezoning or evidence of substantial change in the character of the neighborhood must be produced. Since, as we have also said, this burden is onerous, the task confronting appellants [appellees], whose application followed the comprehensive rezoning by merely four months, is manifestly a difficult one.' " (Emphasis in original.) (Citations omitted.)

Under this test "strong evidence" of error is required to make the issue of mistake in comprehensive zoning fairly debatable and unless such strong evidence is presented by the applicant, the action of the Board in granting a reclassification is arbitrary and capricious.

Here, the trial court's finding that the "testimony produced by the Petitioner-Appellee is not sufficient to overcome the presumption of correctness which attaches with the adoption of a comprehensive zoning map by the County Council" is, in essence, a determination that there was not evidence of mistake in the comprehensive zoning strong and substantial enough to make that issue fairly debatable and that, consequently, the action of the Board in granting the reclassification was arbitrary and capricious. The trial court's further finding that the evidence adduced by the protestants supported the correctness of the 1971 comprehensive zoning, while correct, was not required for a resolution of the issue in this case. Until the presumed validity of the comprehensive zoning map has been overcome, evidence supporting its correctness is immaterial. Thus, while the trial court made a gratuitous finding, he applied the appropriate standard for judicial review. He neither weighed the evidence nor substituted his judgment for that of the Board.

Secondly the applicants contend that the Council erred in placing the subject property in the D.R.-5.5 zone because, at the time of the adoption of the 1971 comprehensive zoning map, it failed to take certain facts into account.

In this case, in order to grant the requested reclassification, the Board needed strong and substantial probative evidence that there was "mistake" or "error" in the comprehensive zoning of 1971. In order to assess the evidence before the Board, it is necessary to understand the inherent nature of the terms "mistake" or "error" as they are used in zoning law. A perusal of cases, particularly those in which a finding of error was upheld, indicates that the presumption of validity accorded to a comprehensive zoning is overcome and error or mistake is established when there is probative evidence to show that the assumptions or

premises relied upon by the Council at the time of the comprehensive rezoning were invalid. Error can be established by showing that at the time of the comprehensive zoning the Council failed to take into account then existing facts, or projects or trends which were reasonably foreseeable of fruition in the future, so that the Council's action was premised initially on a misapprehension. *Bonnie View Club v. Glass*, 242 Md. 46, 52-53, 217 A. 2d 647, 651 (1966); *Jobar Corp. v. Rodgers Forge Community Ass'n.*, 236 Md. 106, 112, 116-18, 121-22, 202 A. 2d 612, 615, 617-18, 620-21 (1964); *Overton v. County Commissioners*, 225 Md. 212, 216-17, 170 A.2d 172, 174-76 (1961); *see Rohde v. County Board of Appeals*, 234 Md. 259, 267-68, 199 A. 2d 216, 218-19 (1964). Error or mistake may also be established by showing that events occurring subsequent to the comprehensive zoning have proven that the Council's initial premises were incorrect. As the Court of Appeals said in *Rockville v. Stone*, 271 Md. 655, 662, 319 A. 2d 536, 541 (1974):

> "On the question of original mistake, this Court has held that when the assumption upon which a particular use is predicated proves, with the passage of time, to be erroneous, this is sufficient to authorize a rezoning."

*See Rohde, supra*, at 234 Md. 267-68, 199 A. 2d 220-21; *England v. Rockville*, 230 Md. 43, 45-47, 185 A. 2d 378, 379-80 (1962); *Pressman v. Baltimore*, 222 Md. 330, 338-39, 160 A. 2d 379, 383 (1960); *White v. County Board of Appeals*, 219 Md. 136, 144, 148 A. 2d 420, 423-24 (1959); *cf. Dill v. The Jobar Corp.*, 242 Md. 16, 20-21, 24, 217 A. 2d 564, 567-68 (1966); *Marcus v. Montgomery County Council*, 235 Md. 535, 540-41, 201 A. 2d 777, 780 (1964); *Offutt v. Board of Zoning Appeals*, 204 Md. 551, 558, 105 A. 2d 219, 221-22 (1954); *Wakefield v. Kraft*, 202 Md. 136, 144-45, 149, 96 A. 2d 27, 30 (1953); *Hoffman v. City of Baltimore*, 197 Md. 294, 307, 79 A. 2d 367, 373-74 (1951).

It is presumed, as part of the presumption of validity accorded comprehensive zoning, that at the time of the

adoption of the map the Council had before it and did, in fact, consider all of the relevant facts and circumstances then existing. Thus, in order to establish error based upon a failure to take existing facts or events reasonably foreseeable of fruition into account, it is necessary not only to show the facts that existed at the time of the comprehensive zoning but also which, if any, of those facts were not actually considered by the Council. This evidentiary burden can be accomplished by showing that specific physical facts were not readily visible or discernible at the time of the comprehensive zoning, *Bonnie View Club, supra,* at 242 Md. 48-49, 52, 217 A. 2d 649, 651 (mineshaft and subsurface rock formation); by adducing testimony on the part of those preparing the plan that then existing facts were not taken into account, *Overton, supra,* at 225 Md. 216-17, 170 A. 2d 174-75 (topography); or by producing evidence that the Council failed to make any provision to accommodate a project, trend or need which it, itself, recognized as existing at the time of the comprehensive zoning, *Jobar Corp., supra,* at 236 Md. 116-17, 202 A. 2d 617-18 (need for apartments). *See Rohde, supra,* at 234 Md. 267-68, 199 A. 2d 221. Because facts occurring subsequent to a comprehensive zoning were not in existence at the time, and, therefore could not have been considered, there is no necessity to present evidence that such facts were not taken into account by the Council at the time of the comprehensive zoning. Thus, unless there is probative evidence to show that there were then existing facts which the Council, in fact, failed to take into account, or subsequently occurring events which the Council could not have taken into account, the presumption of validity accorded to comprehensive zoning is not overcome and the question of error is not "fairly debatable." [3]

---

**3.** In applying the change-mistake rule to test the validity of comprehensive rezoning, the Court of Appeals has long recognized the inherent difficulty in attempting to distinguish between "error" and "change" and has frequently found it unimportant to differentiate between the two. *See, e.g.,* Rohde, *supra,* at 234 Md. 267, 199 A. 2d 221; Pressman, *supra,* at 222 Md. 339, 160 A. 2d 383; White, *supra,* at 219 Md.144, 148 A. 2d 423-24. The fact of the matter is that "error" and "change" are opposite sides of the same coin. On the one hand there can be a change in conditions

Moreover, in reviewing the evidence before the Board, it must also be noted that the opinion or conclusion of an expert or lay witness is of no greater probative value than that warranted by the soundness of his underlying reasons or facts. *Surkovich v. Doub*, 258 Md. 263, 272, 265 A. 2d 447, 451 (1970); *Anderson v. Sawyer*, 23 Md. App. 612, 618, 329 A. 2d 716, 720. The Court of Appeals and this Court have stated that an opinion, even that of an expert, is not evidence strong or substantial enough to show error in a comprehensive rezoning unless the reasons given by the witness as the basis for his opinion, or other supporting facts relied upon by him, are themselves substantial and strong enough to do so. *Stratakis, supra,* at 268 Md. 655, 304 A. 2d 250; *Coppolino v. County Board of Appeals of Baltimore County*, 23 Md. App. 358, 371-72, 328 A. 2d 55, 62 (1974). Viewed in the light of the principles applicable to "error" or "mistake" the testimony presented here does not pass muster.

The applicants contend that at the time of the comprehensive rezoning of 1971 the Council erred in placing the subject property in the D.R.-5.5 zone because they failed to take into account the fact that the subject property was

so pervasive as to constitute a change in the character of the neighborhood which demonstrates that the Council's initial assumptions as to the character of the neighborhood were incorrect. In such cases it has been held that evidence of change in the character of the neighborhood is substantial enough to overcome the presumption of validity ordinarily accorded to a comprehensive rezoning. *See, e.g.,* Rockville v. Stone, *supra,* at 271 Md. 661-62, 319 A. 2d 540; Himmelheber v. Charnock, 258 Md. 636, 641-42, 267 A. 2d 179, 182 (1970); Wier v. Witney Land Co., 257 Md. 600, 614-15, 263 A. 2d 833, 840-41 (1970). On the other hand there can be less significant changes, such as the construction of sewers or roads, which may also indicate that certain other initial assumptions of the Council were incorrect. In such cases it has been held that evidence of change is sufficiently strong to establish error in the comprehensive rezoning so that the presumption of validity generally accorded is overcome. *See, e.g.,* Rockville v. Stone, *supra,* at 271 Md. 662, 319 A. 2d 541; Rohde, *supra,* at 234 Md. 267-68, 199 A. 2d 221; White, *supra,* at 219 Md. 144, 148 A. 2d 422-23. In either event, because the evidence of change demonstrates that the initial premises of the Council were invalid, the presumption of validity accorded to comprehensive rezoning vanishes. Thus, whether the evidence of change is viewed as establishing "change in the character of the neighborhood" or "error in comprehensive rezoning" the result is the same. When subsequent events demonstrate that any significant assumption made by the Council at the time of the comprehensive rezoning was invalid, the presumption of validity accorded to the comprehensive rezoning is overcome.

then unsuitable for residential development.[4] A witness qualified in the fields of real estate and real estate appraisal and the contract purchaser of the subject property testified that it was "unsuitable" for residential development because of its physical characteristics and its proximity to the railroad tracks. They stated that much of the land in the western sector of the subject property lay in the flood plain, and was not usable for any purpose; that in order to provide access to the western portion of the tract it would be necessary to bridge Roland Run Stream at great expense; and that, in any event, the maximum permitted density of 35 units could not be achieved either by single-family residential development or apartment development because the eastern portion of the subject property, adjoining the railroad right-of-way, was undesirable for residential development while the western portion contained insufficient usable land for the construction of 35 units. They concluded that residential development on the subject property would be economically unfeasible and that the only reasonable use which could be made of it consisted of commercial use on the eastern portion of the tract with off-street parking located on the western portion. They acknowledged that the subject property presently contains a profitable nonconforming use and that a single-family residence had been located on the western portion of the tract. They further conceded that the subject property was adjoined on the west and north by land upon which single-family development had taken place; that single-family development presently existed along the right-of-way of the railroad on land adjoining or lying in close proximity to the subject property; and that single-family residential development had recently occurred on land adjoining the railroad right-of-way in other communities located near Lutherville. There were no facts presented to show how much of the land contained in the total tract was unusable; how many units physically could

4. The applicants do not contend that the assignment of a residential classification, D.R.-5.5, to the subject property constituted impermissible confiscation.

be located on the tract; or how much it would cost to bridge Roland Run in order to provide access to the western portion of the subject property. Moreover, there was no explanation as to why it would be impossible to provide access for residential development via School Lane; or why it was any more undesirable here to locate residential units next to the right-of-way of the Northern Central Railroad than it had been to locate residential units next to the railroad within the same and neighboring communities.

This evidence was insufficient to make the question of "error" or "mistake" fairly debatable for two reasons. First, because the conclusion that the subject property was unsuitable for residential development was not supported by adequate reasons or facts, it was entitled to little if any probative value. It was not sufficiently strong and substantial to overcome the presumption of validity of the comprehensive zoning. Secondly, there was no evidence to show that at the time of the comprehensive zoning the Council was unaware of the readily visible physical characteristics and location of the subject property and failed, in fact, to take them into account. Indeed, the existence of easements for public sanitary sewers supports an inference that the Council was, in fact, aware of the physical characteristics of the subject property. Thus, there was no evidence to show that the initial premises of the Council with respect to the subject property were incorrect and that consequently the classification assigned at the time of the comprehensive rezoning was improper.

The applicants next contend that at the time of the comprehensive zoning of 1971 the Council erred in failing to take into account various physical changes which had occurred in the area between the adoption of the 1955 comprehensive zoning map and the 1971 comprehensive zoning map. These changes included the development of a large furniture store on land in the northwest quadrant of the intersection of Railroad Avenue and Seminary Avenue on land zoned as commercial by the 1955 comprehensive zoning map and the development of extensive commercial and apartment uses on land, in close proximity to the

subject property, which had been reclassified from single-family residential zones to commercial and apartment zones after the adoption of the 1955 comprehensive zoning map. The zoning map shows that none of the changes in zoning classification or development have occurred in the area bounded by the Harrisburg Expressway on the west, Seminary Avenue on the north, Railroad Avenue on the east, and the Beltway on the south. Thus, the immediate neighborhood within which the subject property lies has been left essentially unchanged and contains no land classified in the commercial zone other than that at the intersection of Railroad Avenue and Seminary Road, which has been so classified since 1955. Moreover, the zoning map shows that all of the commercial uses existing in a much broader area are located at road intersections. There is not an iota of evidence in the record to indicate that at the time of the comprehensive zoning of the subject property the Council was unaware of either the zoning reclassifications or development which had taken place between 1955 and 1971. Indeed, the presumption that the Council was aware of these occurrences is buttressed by the fact that it was reasonable for the Council, cognizant that commercial uses had already been extended at various road intersections in the area, to conclude that the intrusion of additional commercial zoning into the area at a location other than a road intersection, was contrary to the public interest. Consequently, there is insufficient evidence to make fairly debatable the question of whether the Council erred in failing to consider the effect of the zoning and development which had taken place between 1955 and 1971.

The applicants additionally contend that the Council erred in failing to take into account the projected widening of the Harrisburg Expressway and the Beltway interchange as well as the extension of Charles Street. The only evidence presented as to the impact of these roads on the subject property was that of the applicants' expert, qualified as an expert in real estate and real estate appraisal. He testified that the Beltway interchange requires a "lot of bridgework" and "will go way up in the air," so that it might be seen from

the subject property in the wintertime when the trees are barren of leaves. He conceded, however, that at the time of the comprehensive zoning map, the Council anticipated the widening of the Harrisburg Expressway and the Beltway interchange. Moreover, he acknowledged that even at the time of the Council hearing no plan for an extension of Charles Street had been finalized, making uncertain when, if at all, such an extension might take place. The evidence with regard to widening of the Harrisburg Expressway and the Beltway interchange is insufficient to establish either error or mistake because it supports, rather than rebuts, the presumption that at the time of the comprehensive zoning the Council was aware of the fact that those roads were to be widened. The evidence with respect to the proposed extension of Charles Street is insufficient because it is too speculative in nature to have properly been considered. At the time of comprehensive rezoning, the Council is required to take into account only existing facts and those projects or trends which are reasonably probable of fruition in the foreseeable future. *Hunter v. County Commissioners*, 252 Md. 305, 310, 250 A. 2d 81, 84 (1969) *see Chapman v. Montgomery County*, 259 Md. 641, 649-50, 271 A. 2d 156, 160-61 (1970); *Jobar Corp., supra*, at 236 Md. 112, 202 A. 2d 615; *Rohde, supra*, at 234 Md. 264, 199 A. 2d 218-19; *Trustees of McDonogh Educational Fund and Institute*, 221 Md. 550, 570-71, 158 A. 2d 637, 648 (1960).

The applicants also contend that the Council erred because it failed to take into account the B.R. zoning classification of the subject property, which they assert existed at the time of the comprehensive rezoning, and further failed to take into account the fact that the property owner was seeking a commercial classification for his property. They maintain that at the time of the comprehensive rezoning the Council considered only the possibility of reclassifying the subject property from the R.-6 zone to the D.R.-16 zone. In support of this position they rely on the Log of Issues and Recommendations to the Baltimore County Council, Relative to the Central Sector, used at the public hearing preceding adoption of the 1971 comprehensive zoning map.

This log indicates that the then existing zoning of the subject property was R.-6; that the Planning Board recommended that the subject property be designated D.R.-5.5, the new equivalent of R.-6; that the property owner was requesting a B.R. zoning classification in a local map amendment case then pending; and that a proposed Council resolution recommended D.R.-16 zoning for the subject tract. This evidence, rather than overcoming the presumption that the Council was aware of all of the relevant existing facts at the time of the comprehensive rezoning, supports it.

The record clearly shows that at the time of the comprehensive zoning the subject property had been reclassified to the B.R. zone by the Zoning Commissioner but that that action by the Commissioner was then pending on appeal. Because an appeal was pending, the reclassification granted by the Zoning Commissioner was deprived of the force and effect of law.[5] Consequently, the existing classification of the subject property was properly reflected in the log as R.-6. Moreover, the log patently indicates that a request for reclassification to the B.R. zone was then pending, thus putting the Council on notice of the property owner's desire to have the subject property placed in that classification. Under these circumstances there can be no doubt that the Council was aware of the facts as they then existed, and in particular, of the classification sought by the property owner. Accordingly, its decision to place the subject property in the D.R.-5.5 zone was not premised on a misapprehension.

Finally, the applicants contend that the Council erred in failing to take into account the fact that their property had been utilized for the past 60 years as a building materials and lumber supply yard; that this nonconforming use had always been compatible with the adjoining residential uses; that this nonconforming use could be continued even if the

---

5. Baltimore County Zoning Regulations (Interim ed. 1971) § 500.3a provides:

"Any such reclassification when granted by the Zoning Commissioner shall in the absence of an appeal, have the force and effect of law."

requested reclassification were denied; and that the requested reclassification was sought only for the purpose of permitting the owner to update and improve his present facilities and to protect his right to continue that business in the event that the building should be destroyed by fire.[6]

This contention is without merit for several reasons. There is no evidence to indicate that the Council was unaware of this nonconforming use which had been in existence for 60 years. Moreover, nonconforming uses are by definition inherently incompatible with permitted uses in a zone.[7] Indeed, it is public policy in Baltimore County to drive such nonconforming uses out of permanent existence by preventing the expansion of such uses or their restoration if substantial damages are incurred.[8] Finally, in response to the applicants' argument that they were seeking B.R. zoning solely as "insurance" to guarantee the right to rebuild the present use in the event of casualty, it need only be noted, as the applicants conceded, that once the reclassification was granted, nothing could prevent the development of any of the uses permitted in the B.R. zone on the subject property.[9] Consequently, the evidence again was insufficient to make the question of error fairly debatable.

---

**6.** Baltimore County Zoning Regulations (Interim ed. 1971) § 104 provides, in pertinent part:

" . . . in case any nonconforming business of manufacturing structure shall be damaged by fire or other casualty to the extent of seventy-five (75) per cent of its replacement cost at the time of such loss, the right to continue or resume such nonconforming use shall terminate."

Baltimore County Zoning Regulations (Interim ed. 1971) § 253.1A (29) classifies a lumberyard as a permissible use in a manufacturing zone, thus presumably designating such use as a manufacturing one.

**7.** *See* Baltimore County Zoning Regulations (Interim ed. 1971) § 101, which defines a nonconforming use as:

"A legal use of a building or of land that antedates the adoption of these regulations and does not conform to the use regulations for the zone in which it is located."

**8.** *See* note 6, *supra.*

**9.** These uses include, among others, the following: restaurants, office buildings, bakeries, department stores, food stores, laundromats, automobile sales rooms, bowling alleys, night clubs, warehouses, laboratories, kennels, farm implement stores, and stone or monument works. Baltimore County Zoning Regulations (Interim ed. 1971) § 236.

When all is said and done, this record is totally devoid of any evidence to show that at the time of the comprehensive zoning of the subject property the Council failed to take into account any facts or circumstances then existing relevant to the subject property and its environs so that its initial assumptions and premises in determining the appropriate classification for the subject property were erroneous. Nor was there any evidence of any events occurring subsequent to the time of the comprehensive rezoning, which would show that the Council's assumptions and premises at the time of the comprehensive rezoning had been proved invalid by the passage of time. Under all of the circumstances in this case the presumption of validity accorded to the comprehensive rezoning was not overcome and the question of "error" or "mistake" in the comprehensive zoning of the subject property was not "fairly debatable." The trial court was correct in reversing that portion of the Board's order which granted reclassification to the B.R. zone of the 2.3 ± acres of the subject property which lie on the southeastern side of the center line of Roland Run Stream. Accordingly, the order of the trial court will be affirmed.

*Order affirmed.*
*Costs to be paid by appellants.*

*Lowe, J., Concurring:*

I agree with the result in this case, and with the reasoning, but I feel that we are making more and more complicated, a rule which should and could be kept simple.

A presumption of correctness and validity attaches to the assignment of a zoning classification to any parcel of land, whether by the adoption of a comprehensive zoning map, or, though perhaps with less force, by an individual map amendment.

When a board or other governmental body exercising the zoning function is called upon to decide whether to change a zoning classification, it must determine either whether there was a mistake in the existing zoning, or whether the character of the neighborhood has changed to such an extent that reclassification should be granted.

Judicial review of the action of a board exercising zoning authority is confined within narrow limits. If the evidence before the board is so strong, or conversely so weak, that it does not raise a fairly debatable issue, the board's action must conform to that evidence. If it does not conform, the action is arbitrary, capricious, discriminatory, or illegal, and the court will declare it so. But if the evidence on an issue falls within that broad range that makes the issue fairly debatable, then it is the function of the legislative body, not of a court, to make a finding on that issue.

The dual and not always separable issue has been called the "change-mistake rule". In *Muhly v. County Council,* 218 Md. 543, 147 A. 2d 735 (1959), the Court of Appeals referred to the rule when it said, at 545-46:

> "The chancellor dismissed the bill, on the ground that the question was fairly debatable, and stated that there was evidence before the Council to support a finding that there was either a mistake in the original zoning or that the character of the neighborhood had changed to such an extent that reclassification should be granted."

The Court said further, at 547:

"But zoning can never be completely permanent, and reclassification which finds support in a genuine change in conditions, or clear evidence of mistake, should not be stricken down, even if the reviewing court would have reached a different conclusion."

In *White v. Board of Appeals*, 219 Md. 136, 148 A. 2d 420 (1959), the Court quoted from *Muhly, supra,* and went on to say, at 144:

"As must appear from the resumé of the facts, the case is at least fairly debatable on all issues. The Zoning Commissioner found a change of conditions and a mistake in the original zoning. The County Board of Appeals seems to have based its action on changed conditions, and the Circuit Court certainly did. Actually, there can be said to be aspects of both original error and change. * * * We think it is not important which view is taken for under either, or a combination of the two, the presumption as to the correctness of the 1955 zoning vanishes."

Appellants in *Pressman v. Baltimore*, 222 Md. 330, 160 A. 2d 379 (1960), who protested below against three ordinances rezoning certain tracts of land, contended on appeal, *inter alia,* "that all three ordinances are invalid because there has been no showing of error in the original zoning plan or of such change in conditions as would warrant a departure from it". I note that neither the appellants there nor the Court considered it necessary to consider mistake and change as separate concepts. The Court said, at 339:

"However desirable commercial strip zoning along arterial highways may have appeared in 1931, there is ample evidence in this case to support the view that it has not stood the test of time and experience. Whether this should be regarded as an error in original zoning or the result of changed conditions may be a matter of a choice of words or of

approach. In either event, a contention that the action of the legislative body in rezoning these properties is devoid of support, simply cannot be sustained."

When their rezoning application was denied by the Mayor and Council of Rockville, there being no statutory appeal procedure, appellants in *England v. Rockville*, 230 Md. 43, 185 A. 2d 378 (1962), alleged that the denial was arbitrary and confiscatory. The court below denied relief, but the Court of Appeal reversed. It said, at 46-47:

"There was clear evidence of original mistake or change of condition, in addition to the evidence of practical inability to improve the lots for residential use, and that the granting of the application would conform the use to the recommended future use of the whole area, as set out in the proposed comprehensive plan. * * * There was not sufficient evidence to the contrary to make the issue fairly debatable."

In *Overton v. County Commissioners*, 225 Md. 212, 170 A. 2d 172 (1961), a zoning reclassification was opposed by protesting neighbors. The rezoning was granted by the governing body, affirmed by the Circuit Court, and affirmed by the Court of Appeals. One of the contentions on appeal was the combined allegation

"that there was no substantial evidence of a basic mistake in the original zoning or of a substantial change in the character of the neighborhood to warrant the reclassification."

The planning staff had recommended the rezoning on the ground that there was a mistake in the original classification. The governing board found that there had been a mistake. The lower court and the Court of Appeals said the issue was fairly debatable. The Court of Appeals, quoting from *West Ridge, Inc. v. McNamara*, 222 Md. 448, 160 A. 2d 907 (1960), and referring to its decisions there cited, said, in part, at 218-19:

"These cases recognize the familiar rules that in the case of piecemeal rezoning, there must be a showing of either an error in original comprehensive zoning or such a change in conditions as to warrant rezoning, that if either of these is shown, or if there are facts from which the legislative body could reasonably have made such a finding (*i.e.*, that the matter is at least fairly debatable), the courts may not interfere with the legislative action * * *."

The Court in *Overton* confined its decision to the question of whether a mistake was made in the original classification, and said that there was ample evidence before the legislative body from which it could find mistake in the original comprehensive zoning.

In *Rohde v. County Board*, 234 Md. 259, 199 A. 2d 216 (1964), the Court of Appeals affirmed a circuit court order affirming the County Board of Appeals in granting an application for rezoning. The Court said, at 267-68:

"To warrant piecemeal rezoning, there must be a showing of error in the comprehensive rezoning when made or a subsequent change of conditions, or both. It is sometimes difficult to say whether some evidence shows original error or a change in conditions, and it may not be necessary to resolve the question. *Pressman v. City of Baltimore*, 222 Md. 330, 160 A. 2d 379. That, we think, is the situation here. The applicant produced considerable expert testimony to show that either as a result of lack of anticipation of trends of development in 1955 or as a result of changes in trend which have occurred since then, whether anticipated or not, the existing zoning was in error at the time of the hearing."

After commenting that a comprehensive zoning map was entitled to a presumption of correctness, and the burden was on the applicants for reclassification to show an error in the map or a change of conditions in the neighborhood, the

Court of Appeals held in *Jobar Corp. v. Rodgers Forge*, 236 Md. 106, 202 A. 2d 612 (1964), that a Board's decision was not in accordance with law when it declined to permit evidence of projects which were reasonably probable of fruition in the foreseeable future. It said in effect that the Board was wrong when it felt that it was limited to a consideration of evidence of the situation existent at the time of the hearing, and no potential, even though imminent, future changes in that situation or future needs of the public could be considered. On the original appeal to the circuit court, that court had remanded the case to the Board for further hearing. Upon further hearing, the Board found both original error and change, and granted the rezoning. When that order was appealed, the circuit court reversed. The Court of Appeals reversed the lower court, and held that the evidence before the Board at the second hearing made both original error and change fairly debatable issues, and that the Board's grant of the rezoning should not be disturbed by the courts.

In the very recent zoning case of *Rockville v. Stone*, 271 Md. 655, 319 A. 2d 536 (1974), the Court of Appeals observed that, "despite the intriguing factual and procedural posture present here, there is really very little new under the sun in this State as far as zoning cases are concerned". One element of the factual posture was that the rezoning involved was a down zoning, applied for by the City of Rockville Planning Commission, granted by the City over the opposition of the landowners, reversed by the circuit court, and reinstated by the Court of Appeals. The down zoning nullified a piecemeal rezoning which the City had previously granted. The Court of Appeals concluded that the evidence before the legislative body made each of the issues of change and of mistake fairly debatable. It commented that the original mistake was an assumption which proved, with the passage of time, to be erroneous.

It seems to me that the failure of an expected change to take place could be characterized, with equal effect, as a change, negative in nature, or as a mistake in making the assumption in the first place. But an assumption may be

sound at the time it is made, even though subsequent events do not bear it out.

The dilemma is one of words, not principles. This is why I urge simplicity, not proliferating complexity, in expressing the legal requirement for a zoning change. I think we should make it clear that whether we say "mistake" or "error" in the original zoning, we mean exactly the same thing. I think we should make it clear that whether we say "change in the character of the neighborhood", or "change in conditions", or "change in circumstances", we mean exactly the same thing. A change in "conditions" or a "change in circumstances", which affects the "character of the neighborhood" obviously indicates a "change in the character of the neighborhood", and any attempt to give different meanings to these phrases is a distinction without a difference. A change of "conditions" or of "circumstances" which does not affect the character of the neighborhood is irrelevant in any event.

I see no significance in attempting to put on a different basis, a failure to consider facts in existence at the time of zoning, or a failure to foresee a future which was foreseeable at the time of zoning, or a failure to foresee a future which was not foreseeable at the time of zoning.

The cases I have cited, and from which I have quoted, are not intended to show that I disagree with the law which governs the outcome of the case now before us. The cases are cited to show that in no case has there been a significant distinction among "mistake", "error", or "change". In no case has there been a significant distinction based on whether known facts were overlooked, foreseeable facts were not foreseen, or unforeseeable changes later occurred. Rarely has the Court even treated mistake and change as separate concepts.

I believe that the majority opinion in this case unnecessarily takes the long way around. I prefer the short way around, expressed by Chief Judge Brune for the Court in *Rohde v. County Board, supra,* when he said:

"The applicant produced considerable expert testimony to show that either as a result of lack of

anticipation of trends of development in 1955 or as a result of changes in trend which have occurred since then, whether anticipated or not, the existing zoning was in error at the time of the hearing."

The test that the courts should apply in any review of legislative action on a rezoning request is this: Did the applicant produce evidence sufficient to overcome the presumption of correctness of the existing zoning, and to make fairly debatable the issue of whether the existing zoning was in error at the time of the hearing.